**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ――――――――――――――――― : | | |
| NATIONAL ENDOWMENT FOR : | | |
| DEMOCRACY, : | | |
| : | No. 1:25-cv-648-DLF | |
| *Plaintiff*, : | | |
| : | | |
| v. : | | |
| : | | |
| UNITED STATES OF AMERICA, et al., : | | |
| : | | |
| *Defendants*. : | | |
| ――――――――――――――――― : | | |

**PLAINTIFF'S SUPPLEMENTAL STATUS REPORT AND
REQUEST FOR STATUS CONFERENCE**

As a supplement to the parties' Joint Status Report of February 19, 2026, Plaintiff the National Endowment for Democracy ("Endowment" or "NED") submits the following statement and respectfully requests that this Court hold a status conference at the Court's earliest convenience.

**Background**

1.      In January 2025, Defendants the United States of America, et al. ("Defendants") began quietly moving to block the Endowment's ability to pursue its congressionally recognized mission by freezing its congressionally appropriated funding.  ECF No. 35 ("Am. Compl.") ¶ 62. In what was then an unprecedented level of interference with the Endowment's funds, Defendants refused to obligate or disburse approximately $239 million in appropriations.  *Id.* ¶¶ 63, 78.

2.      By the end of February 2025, this cash shortage had thrown the Endowment into a nearly existential crisis.  Am. Compl. ¶¶ 84-91.  After extensive efforts to work with Defendants

1

and other Executive Branch officials to secure the release of its funds, the Endowment was left with no choice but to file this lawsuit and to seek a temporary restraining order (TRO). The Endowment filed a motion for a TRO on March 6, 2025. ECF No. 5.

3.    The next day, counsel for Defendants emailed counsel for the Endowment to report that while he did not have "specific details" to "provide just yet," he "th[ought] there [was] a good chance . . . [the Endowment's] request for a temporary restraining order[] could soon become moot." Am. Compl. ¶ 93. Within days, Defendants began to release the Endowment's funds into its bank account. *Id.* ¶ 94. The Endowment agreed to hold the proceedings on its TRO in abeyance. ECF No. 14.

4.    Although the flow of funding continued over the next few months, so did Defendants' interference. Executive Branch officials insisted (for the first time ever) that the Endowment needed to obtain a waiver to receive its funding, Am. Compl. ¶ 97; they refused to follow the customary practice of apportioning the Endowment's funds in one lump sum, *id.* ¶ 99; and they made unlawful threats to onboard the Department of Government Efficiency at the Endowment, *id.* ¶¶ 101-06.

5.    On June 11, 2025, counsel for Defendants informed counsel for the Endowment that the Executive Branch had decided to withhold the $95 million balance of the funding appropriated for the Endowment in fiscal year 2025. Am. Compl. ¶ 109. Counsel stated that this decision was consistent with the State Department's full-year spending plan, which specified that "[r]emaining resources may be made available for obligation in FY 2025 subject to review for alignment with Administration priorities." *Id.* ¶ 108.

6.    Once again, this refusal to obligate or disburse the Endowment's congressionally appropriated funds was devastating to the Endowment. Am. Compl. ¶ 118. The interruption in

funding directly interfered with the Endowment's ability to carry out its core mission, blocking

grants to projects abroad that would support critical election monitoring, help democracy

activists overcome censorship, maintain access to independent news, and advance reforms to

level the playing field for American businesses and workers.  *Id.* ¶ 120.

7.      To ensure that the Endowment could continue to carry out its congressionally

recognized mission, the Endowment filed a motion for a preliminary injunction.  ECF No. 40.

On August 11, 2025, this Court granted the Endowment's motion and enjoined Defendants from

"withholding, blocking, reserving, or otherwise interfering with payment of appropriated funds

for fiscal year 2025 to the Endowment, including by interfering with the apportionment,

obligation, and ultimate disbursement of such funds."  ECF No. 45; *see* ECF No. 46.  Defendants

released the Endowment's fiscal year 2025 funds.

8.      On November 12, 2025, Congress appropriated the first tranche of the

Endowment's fiscal year 2026 funds.  In a continuing resolution, Congress appropriated $105

million "[f]or grants made by the Department of State to the National Endowment for

Democracy."  Pub. L. No. 118-47, 138 Stat. 460, 737 (2024); *see* Pub. L. No. 119-37 (2025)

(continuing resolution for first four months of fiscal year 2026).

9.      By mid-January 2026, despite repeated inquiries from the Endowment to the State

Department regarding the Endowment's fiscal year 2026 funds, Defendants still had not

obligated or disbursed any of those funds to the Endowment.  ECF No. 55 at 1-2 (joint status

report of Jan. 14, 2026).  Counsel for the Endowment reported to this Court that they had

requested an update from counsel for Defendants, but that counsel for Defendants could not

provide responsive information at that time.  ECF No. 57 at 2 (joint status report of Jan. 29,

2026).

10.     This Court directed the parties to file another joint status report by February 9 and specified that, in the report, "defendants shall indicate whether they have obligated and disbursed the Endowment's Fiscal Year 2026 funding and, if not, provide an explanation for why not." Minute Order (Jan. 30, 2026).

11.     On February 3, 2026, Congress enacted a full-year appropriations law.  The law appropriates $315 million "[f]or grants made by the Department of State to the National Endowment for Democracy." Pub. L. No. 119-75, 140 Stat. 173, 521 (2026).  That law passed Congress with overwhelming and bipartisan support in the Senate and was signed by the President following his Administration's issuance of a Statement of Administration Policy supporting the bill.  *See* https://www.whitehouse.gov/wp-content/uploads/2026/01/SAP-HR-7147-HR-7148.pdf.

12.     On February 9, the parties informed the Court that Defendants still had not obligated or disbursed any of the Endowment's funds.  ECF No. 58.  In response to this Court's order that Defendants "provide an explanation" for their failure to obligate or disburse the Endowment's funding, Defendants stated that prior to Congress's passage of a full-year appropriations bill, "due to uncertainties over full year funding, the Department of State did not allot any FY 2026 funding to the Bureau of Democracy, Human Rights, and Labor (DRL), the bureau responsible for obligating funds to NED." ECF No. 58 at 1 (joint status report of Feb. 9, 2026).  Because a full-year funding bill had passed, however, Defendants insisted they were "working on the allotment of that funding to State bureaus, including DRL." *Id.*

13.     In the same status report, the Endowment responded by stating that it "appreciates Defendants' confirmation that it is working on allotting full-year funding to NED, which will ensure the obligation and disbursement of full-year funds to the Endowment, and Plaintiff looks

forward to their prompt action." Defendants did not correct the impression they had given that they were working on allotting the Endowment's fiscal year 2026 funding. To the contrary, Defendants' only addition to the joint status report after seeing the Endowment's response was to request that any subsequent joint status report "be due no earlier than February 19 to allow additional time for State to conduct the activities described below." *Id.* at 1-2.

14.     The Court ordered the parties to file another status report on or before February 19. Minute Order (Feb. 10, 2026). "At that time," the Court directed, "defendants shall explain what steps they have taken toward allotting, apportioning, obligating and disbursing the Endowment's Fiscal Year 2026 funding and they shall specify when the Endowment will receive the funding that Congress has appropriated for it." *Id.*

15.     Yesterday, on February 19, Defendants purported to respond to this Court's order. Defendants observed that Congress's full-year appropriations bill requires that the Endowment's funds be apportioned no later than 60 days after enactment. Defendants stated that they "will either apportion funding in the NED account by [the] 60-day deadline (April 4, 2026); if so directed by President, propose to Congress a full or partial rescission under the Impoundment Control Act, 2 U.S.C. §§681-688; or consider other lawful options. No decision has yet been made, and the statutory deadline remains six weeks away." ECF No. 59 at 1 (joint status report of Feb. 19, 2026).

### The Endowment's Supplemental Response to Defendants' February 19 Statement

In response to Defendants' response of February 19, the Endowment respectfully requests that this Court hold a status conference with the parties at the Court's earliest convenience. Defendants' February 19 response is either an abrupt shift from representations made ten days prior, or else an acknowledgment that Defendants' earlier representations were highly

misleading—raising questions about whether Defendants' further representations in joint status reports will be direct and trustworthy.  Defendants' response also raises a host of unanswered and urgent questions—including questions that this Court has posed in its recent minute orders. The Endowment respectfully requests that this Court hold a status conference to address the issues raised by Defendants' response and to inform whether further motion proceedings before this Court may be needed.

 1.  Defendants' February 19 response—which states that Defendants have not yet made a "decision" on whether to give the Endowment its appropriated funds—reveals that Defendants' representations ten days earlier were either false or misleading.  On February 9, in response to this Court's order that Defendants "provide an explanation" for why the Endowment had not yet received its funding, Defendants stated that they had not previously allotted funds to the State Department bureau (DRL) that obligates funds to the Endowment, but they were now "working on the allotment of that funding to State bureaus, including DRL."

 The clear implication of that statement was that Defendants were working on allotting *the Endowment's* funds.  The Endowment made clear that it read Defendants' statement that way; it stated in its response—which went uncorrected by Defendants—that it "appreciates Defendants' confirmation that it is working on allotting full-year funding to NED, which will ensure the obligation and disbursement of full-year funds to the Endowment, and Plaintiff looks forward to their prompt action."  This Court appeared to read Defendants' statement the same way; it directed that Defendants' next status report "explain what steps they have taken toward allotting, apportioning, obligating and disbursing the Endowment's Fiscal Year 2026 funding and they shall specify when the Endowment will receive the funding that Congress has appropriated for it."

Defendants now suggest that they were not making any representation about the Endowment's funding at all. *See* ECF No. 59 at 2. But if that is true, it just exposes what Defendants actually did in their February 9 statement; they provided language that was targeted to give the *impression* that they had "provide[d] an explanation" regarding the Endowment's funding, as this Court directed, without ever actually doing so. Defendants' actions have, at minimum, thrown into serious doubt the ability to trust that Defendants will give direct answers to important questions in further joint status reports.

2. Defendants' February 19 response also leaves unanswered a host of critical questions—including questions that Defendants were directed to address in this Court's minute orders. Most glaringly, Defendants have never provided an adequate explanation for why the $105 million in fiscal year 2026 funding that Congress appropriated for the Endowment *more than three months ago*, in *November 2025*, still has not been obligated or disbursed to the Endowment. Defendants' February 19 response does not even mention that pot of funding, and its reliance on the 60-day language in the February full-year appropriations bill supplies no explanation for their extended delay in apportioning, allotting, obligating, and disbursing the funds that Congress appropriated several months prior.

Defendants' February 9 response, which has proved to be either false or misleading, addresses the $105 million but raises more questions than it provides answers. For instance, Defendants point to the fact that the November continuing resolution (CR) was a partial-year CR. But they do not explain why the Endowment could not receive funds from that partial-year CR, given that the Endowment has always received funds from partial-year CRs in prior fiscal years. Nor do they explain why the State Department bureau that obligates funds to the

Endowment did not receive funding from the November CR, when plenty of agencies across the Executive Branch have had no such trouble.

Defendants' February 19 response raises further questions, with troubling implications. For instance, Defendants simply have not addressed the topics raised in this Court's February 10 Minute Order—specifically, "what steps they have taken toward allotting, apportioning, obligating and disbursing the Endowment's Fiscal Year 2026 funding" and "when the Endowment will receive the funding that Congress has appropriated for it." The absence of answers to those questions suggests that Defendants have not taken any steps at all, even after three months of inquiries about the $105 million that Congress appropriated for the Endowment last November. Defendants' response does say that they are considering going back to Congress—which less than three weeks ago voted to fund the Endowment with bipartisan support—or otherwise "consider[ing] other lawful options." Defendants never explain what "other lawful options" they have in mind that would permit them to defy Congress's decision to fund the Endowment. And considering the year-plus effort to interfere with the Endowment, it is difficult to see that statement as anything more than an admission that Defendants will continue to search for new ways to block the Endowment from getting its funding.

A status conference would be helpful in getting answers to the many questions raised by Defendants' statements.

3. Finally, a status conference would inform any potential further proceedings before this Court. The Endowment has been trying for months to resolve the issues surrounding its fiscal year 2026 funding without seeking further relief from this Court, but Defendants' recent statements cast doubt on its ability to do so. That has left the Endowment in highly challenging circumstances. Having not received *any* of its fiscal year 2026 funding, the Endowment will

within days deplete funds available for new grant obligations, leaving sixty percent of approved commitments unfunded.  The impacts will also be felt by the Endowment's core institutes, which cannot receive any of the fiscal year 2026 funding that Congress earmarked for them.  A status conference would serve the important purpose of informing whether Defendants will follow Congress's directions and avert the Endowment's harms, or whether the Endowment may be forced once again to seek relief from this Court—which would bear on Defendants' ability to maintain their motion to dismiss the case as moot.

Counsel for the Endowment can be available any day the week of February 23.

Counsel for Defendants provided the following statement when asked for their position on the Endowment's request for a status conference:  "Counsel for the Defendants received a draft of Plaintiff's submission, which included Plaintiff's asserted basis for a request for a status conference, at 5:56 pm on Friday, February 20. Given the nature of Plaintiff's assertions, the need for consultation, and limited present availability of counsel because of preexisting personal obligations, Defendants cannot provide a substantive response or position on Plaintiff's request at this time, but will do so before 3pm on Monday, February 23."

Dated: Feburary 20, 2026

Respectfully submitted,

/s/ Donald B. Verrilli, Jr.
Donald B. Verrilli, Jr. (D.C. Bar No. 420434)
Ginger D. Anders (D.C. Bar No. 494471)
Jeremy S. Kreisberg (D.C. Bar No. 1048346)
Helen E. White (D.C. Bar No. 1741368)
Esthena L. Barlow (D.C. Bar No. 90000252)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Ginger.Anders@mto.com
Jeremy.Kreisberg@mto.com
Helen.White@mto.com
Esthena.Barlow@mto.com

Gabriel M. Bronshteyn (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
(415) 512-4000
Gabriel.Bronshteyn@mto.com

Miranda E. Rehaut (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
(213) 683-9100
Miranda.Rehaut@mto.com

*Attorneys for the National Endowment for Democracy*