## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

NATIONAL ENDOWMENT FOR
DEMOCRACY,
1201 Pennsylvania Avenue NW
Suite 1100
Washington, DC 20004;

               Plaintiff,

v.

THE UNITED STATES OF AMERICA;

UNITED STATES DEPARTMENT OF
STATE,
2201 C Street NW
Washington, DC 20520;

MARCO RUBIO, UNITED STATES
SECRETARY OF STATE, *in his official
capacity*,
2201 C Street NW
Washington, DC 20520;

UNITED STATES OFFICE OF
MANAGEMENT AND BUDGET,
725 17th Street NW
Washington, DC 20503;

RUSSELL VOUGHT, DIRECTOR OF
UNITED STATES OFFICE OF
MANAGEMENT AND BUDGET, *in his
official capacity*,
725 17th Street NW
Washington, DC 20503;

UNITED STATES DEPARTMENT OF
TREASURY,
1500 Pennsylvania Avenue NW
Washington, DC 20220;

SCOTT BESSENT, UNITED STATES
SECRETARY OF THE TREASURY, *in his
official capacity*,

Case No. 1:25-cv-648-DLF

[PROPOSED] SUPPLEMENTAL
COMPLAINT

1500 Pennsylvania Avenue NW
Washington, DC 20220;

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
Hubert H. Humphrey Building
200 Independence Avenue SW
Washington, DC 20201;

ROBERT F. KENNEDY, JR., THE UNITED
STATES SECRETARY DEPARTMENT OF
HEALTH AND HUMAN SERVICES, *in his
official capacity*,
U.S. Department of Health and Human
Services
Hubert H. Humphrey Building
200 Independence Avenue SW
Washington, DC 20201;

and

MELISSA BRUCE, DIRECTOR OF THE
UNITED STATES SECRETARY
DEPARTMENT OF HEALTH AND
HUMAN SERVICES' PROGRAM
SUPPORT CENTER, *in her official capacity*,
U.S. Department of Health and Human
Services
Hubert H. Humphrey Building
200 Independence Avenue SW
Washington, DC 20201;

                              Defendants.

## [PROPOSED] SUPPLEMENTAL COMPLAINT

### A.    Supplemental Factual Allegations

1.    On July 21, 2025, in order to ensure that the Endowment could continue to carry

out its congressionally mandated mission, the Endowment filed a motion for a preliminary

injunction seeking release of the approximately $95 million in congressionally appropriated

funding that Defendants were withholding.  ECF No. 40.

2.      On August 11, 2025, this Court granted the Endowment's motion for a preliminary injunction.  ECF No. 45 (P.I. Order).  The Court concluded that by "subjecting $95 million of the Endowment's funding to 'review for alignment with Administration priorities,'" Defendants had imposed "precisely the kind of extra-statutory requirement prohibited by the NED Act, 22 U.S.C. § 4412(a)."  ECF No. 46 at 10 (P.I. Op.).  The Court further concluded that "the withholding of $95 million interferes with the statutory mandate that annual funding must 'enable the Endowment to carry out its purposes.'"  *Id.* at 8 (quoting 22 U.S.C. § 4412(a)).  And the Court also went on to find the Endowment was likely to succeed on its arbitrary and capricious claim, explaining that Defendants' reasons for withholding funding—that "sufficient funds had already been disbursed" and that reserving funds ensured the Endowment would retain that amount of funding the following fiscal year—were "neither reasoned nor rational."  *Id.* at 10-11.

3.      The Court issued an order enjoining Defendants from "withholding, blocking, reserving, or otherwise interfering with payment of appropriated funds for fiscal year 2025 to the Endowment, including by interfering with the apportionment, obligation, and ultimate disbursement of such funds."  ECF No. 45 (P.I. Order).

4.      The same day this Court entered the preliminary injunction, the State Department announced to the Endowment that it was initiating "a programmatic and financial audit of NED and each of its four core institutes."  *See* ECF No. 48 at 2 (Joint Status Report of Aug. 22, 2025).  Because that assertion conflicts with the NED Act provision authorizing the State Department to audit only the "financial transactions of the Endowment," 22 U.S.C. § 4413(g), the Endowment requested a meeting with Executive Branch officials.  At that meeting, and notwithstanding this Court's preliminary injunction, the Executive Branch officials explained that a purpose of the

audit is to ensure that the Endowment's activities are aligned with Administration "priorities." ECF No. 48 at 2 (Joint Status Report of Aug. 22, 2025).

5. Between August 11 and August 13, Defendants apportioned approximately $95 million—the remainder of the Endowment's fiscal year 2025 funding—and made that funding available for obligation, as required by the injunction. ECF No. 47 (Defs.' Status Report of Aug. 13, 2025).

6. On August 21, 2025, Defendants obligated the remaining funding to the Endowment. ECF No. 48 at 1(Joint Status Report of Aug. 22, 2025).

7. On September 10, 2025, the Endowment submitted over 22,000 pages of documents requested by the State Department pursuant to its audit. The Endowment's accompanying cover letter underscored the Endowment's continued commitment to consult and engage with the Executive Branch in connection with the Endowment's work and stated it would await feedback from the State Department regarding the provided materials. To date, the Endowment has not received any official response.

8. On October 9, 2025, Defendants filed a notice of appeal from this Court's preliminary injunction ruling. ECF No. 51.

9. On November 12, 2025, Congress appropriated the first tranche of the Endowment's fiscal year 2026 funds. In a continuing resolution, Congress extended the Endowment's fiscal year 2025 funding level for the first third of fiscal year 2026, appropriating the prorated amount of approximately $105 million "[f]or grants made by the Department of State to the National Endowment for Democracy." Pub. L. No. 118-47, 138 Stat. 460, 737 (2024); *see* Pub. L. No. 119-37, 139 Stat. 495 (2025) (continuing resolution for first four months of fiscal year 2026).

10.     On the same day as the continuing resolution became law, Defendant Office of Management Budget issued OMB Bulletin No. 26-01 over the signature of Defendant Russell Vought.[1]  In that bulletin, Defendant Vought stated that he was "automatically apportioning" to each Treasury account "the pro-rata share of the rate of operations provided" in the continuing resolution.  The bulletin explained that "[a]ll automatically apportioned CR funds are apportioned as a 'lump sum.'"  The bulletin further explained that the "pro-rata share of the rate of operations" could be "calculated" by computing "33.42 percent" of the appropriated amount, because the continuing resolution was for "122 days/365 days."

11.     For the Endowment, that calculation yields $105,273,000,[2] which is 33.42 percent of $315 million (the amount appropriated in fiscal year 2025 and continued by the November continuing resolution).

12.     Following the November 2025 continuing resolution, the Endowment reached out repeatedly to Executive Branch officials to inquire about the status of its fiscal year 2026 funding.  Initially the Endowment was informed that its "confirmed amount" of funding from the continuing resolution was $105,273,000.  But the Endowment did not receive any of those funds.  Upon receiving further inquiries from the Endowment, Executive Branch officials confirmed that the Endowment's funds were not yet apportioned or allotted for obligation.  Those officials were not able to provide a reason for the withholding of the Endowment's funding.

13.     In December 2025, counsel for the Endowment and counsel for Defendants discussed potential settlement options and motions practice.  ECF No. 55 (Joint Status Report of Jan. 14, 2026).  Defendants indicated that they intended to move to dismiss the case as moot.  *Id.*

---

[1] *See* https://www.whitehouse.gov/wp-content/uploads/2025/11/OMB-Bulletin-No.-26-01-Apportionment-of-the-Continuing-Resolutions-for-Fiscal-Year-2026.pdf.
[2] The Supplemental Complaint refers to this amount as simply $105 million.

14.     By the end of January 2026, Defendants still had not apportioned, obligated or disbursed any portion of the Endowment's $105 million in fiscal year 2026 funding.  ECF No. 57 (Joint Status Report of Jan 29, 2026).  Despite repeated requests for information, counsel for Defendants maintained that they "d[id] not have responsive information" about the status of the Endowment's money.  *Id.* at 2.

15.     The October-to-January period covered by the November 2025 continuing resolution passed without the Endowment receiving any of the funding that Congress appropriated for it in that continuing resolution.

16.     This Court directed the parties to file a joint status report by February 9.  Minute Order (Jan. 30, 2026).  The Court specified that, in the report, "defendants shall indicate whether they have obligated and disbursed the Endowment's Fiscal Year 2026 funding and, if not, provide an explanation for why not."  *Id.*

17.     On February 3, 2026,  Congress enacted a full-year appropriations law.  The law appropriates $315 million "[f]or grants made by the Department of State to the National Endowment for Democracy."  Pub. L. No. 119-75, 140 Stat. 173, 521 (2026).  It also provides that the funds appropriated to the Endowment "shall be apportioned to the Endowment not later than 60 days after the date of enactment of this Act."  *Id.*  The law passed Congress with overwhelming and bipartisan support and was signed by the President following his Administration's issuance of a Statement of Administration Policy supporting the bill.[3]

18.     By February 9, 2026, Defendants still had not apportioned, obligated, or disbursed any of the Endowment's fiscal year 2026 funds—not the $105 million appropriated in

---

[3] *See* Exec. Off. of the Pres., *Statement of Administration Policy* (Jan. 22, 2026), *available at* https://www.whitehouse.gov/wp-content/uploads/2026/01/SAP-HR-7147-HR-7148.pdf.

November, nor the remaining $210 million appropriated in the full-year spending bill. The extended delay in apportioning the $105 million portion of the Endowment's fiscal year 2026 was unlike any the Endowment had seen before the events giving rise to this litigation began.

19. In the parties' scheduled joint status report, the Endowment reported to the Court that it still had not received any of its funding. ECF No. 58 (Joint Status Report of Feb. 9, 2026). In response to this Court's order that Defendants "provide an explanation" for their failure to obligate or disburse the Endowment's funding, Defendants stated that prior to Congress's passage of a full-year appropriations bill, "due to uncertainties over full year funding, the Department of State did not allot any FY 2026 funding to the Bureau of Democracy, Human Rights, and Labor (DRL), the bureau responsible for obligating funds to NED." *Id.* at 1.

20. That purported explanation starkly conflicts with the Executive Branch's past practice. Historically, when the Endowment's funding was appropriated in a continuing resolution, that fact was no barrier to the Endowment receiving its funding. Instead, the Endowment has always received funds from partial-year CRs in prior fiscal years. Defendants' purported explanation also conflicts with the Executive Branch's conduct with respect to other appropriations in fiscal year 2026, because the Executive Branch provided funding to other agencies following the November 2025 continuing resolution and prior to the passage of the full-year appropriations bill.[4]

21. In the same February 9 status report, Defendants represented that because a full-year funding bill had now been enacted, they were "working on the allotment of that funding to State bureaus, including DRL." *Id.* The Endowment responded by stating that it "appreciates

---

[4] *See* https://openomb.org/search?term=&tafs=&account=&approver=&year=2026& approvedStart=&approvedEnd=&lineNum= (listing apportionment actions in fiscal year 2026).

Defendants' confirmation that it is working on allotting full-year funding to NED, which will ensure the obligation and disbursement of full-year funds to the Endowment, and Plaintiff looks forward to their prompt action." *Id.* at 2. Defendants did not suggest that the Endowment had misunderstood Defendants' representation or correct the Endowment's expressed understanding that Defendants were working on allotting the Endowment's fiscal year 2026 funding. To the contrary, Defendants' only addition to the joint status report after seeing the Endowment's response was to request that any subsequent joint status report "be due no earlier than February 19 to allow additional time for State to conduct the activities described below"—namely, the apportionment, obligation, and disbursement of the Endowment's fiscal year 2026 funds. *Id.* at 1-2.

22.    The Court ordered the parties to file another status report on or before February 19. Minute Order (Feb. 10, 2026). "At that time," the Court directed, "defendants shall explain what steps they have taken toward allotting, apportioning, obligating and disbursing the Endowment's Fiscal Year 2026 funding and they shall specify when the Endowment will receive the funding that Congress has appropriated for it." *Id.*

23.    On February 19, 2026, Defendants purported to respond to this Court's order. Defendants observed that Congress's full-year appropriations bill requires that the Endowment's funds be apportioned no later than 60 days after enactment. Defendants stated that they "will either apportion funding in the NED account by [the] 60-day deadline (April 4, 2026); if so directed by the President, propose to Congress a full or partial rescission under the Impoundment Control Act, 2 U.S.C. §§681-688; or consider other lawful options. No decision has yet been made, and the statutory deadline remains six weeks away." ECF No. 59 at 1 (Joint Status Report of Feb. 19, 2026).

24.     That response signaled either an abrupt change in position from the representations Defendants had made ten days prior, or else an acknowledgment that Defendants' earlier representations were highly misleading.  The statement also raised a host of unanswered questions, which were becoming more urgent by the day as the Endowment continued to go without any of its congressionally appropriated fiscal year 2026 funding. Accordingly, the Endowment requested a status conference.  ECF No. 60 (Supplemental Status Report of Feb. 20, 2026).

25.     This Court scheduled a status conference for February 25, 2026.  Minute Order (Feb. 23, 2026).  In the five days between the Endowment's request for a status conference and the date of the conference, Defendants provided no further update regarding the status of the Endowment's funds.

26.     On February 25, 2026, this Court held the status conference and asked counsel for Defendants whether he could provide any further information.  Status Conference Tr. 3. "Unfortunately," counsel replied, "there's not much more we can update the Court."  *Id.*

27.     When asked to explain the "discrepancy" between Defendants' representations from February 9th and 19th, counsel for Defendants refused to acknowledge their statements were misleading.  *Id.* at 3-4.  He asserted that on February 9, Defendants had stated that they "were working on the allotment of the fiscal year 2026 funding to state bureaus, including the bureau that the funding for the Endowment . . . goes into, which is DRL."  *Id.* at 4.  He stated that the Endowment's funding "does not go directly to" the Endowment but to DRL, and that DRL as a whole "did not receive continu[ing] resolution funding."  *Id.* at 6.

28.     In other words, Defendants' position is that their February 9 statements were not misleading because they made representations only about allotting funding to DRL, not to the

Endowment.  As this Court put it at the status conference, that interpretation of the statement was contrary to how "the Court read it and [the Endowment] read it, which was that [they] were actively working on allotting the funding to the Endowment."  Status Conference Tr. 8.  And Defendants "made no effort to correct that obvious misunderstanding that both the Court and the [Endowment] had."  *Id.* at 8-9.

29.    Moreover, Defendants' contention that the apportionment of the Endowment's funding is contingent upon the apportionment of funding to DRL is not accurate.  Although DRL administratively manages the Endowment's funding, the Endowment's funds are maintained in a federal account that is separate from funds appropriated for the activities of the State Department and its bureaus, including DRL.  The Endowment's funding is apportioned directly into this account; it is not first apportioned to DRL.[5]

30.    The Endowment's full-year funding has been appropriated since February 3, 2026.  But well before that, in November 2025, Congress appropriated to the Endowment $105 million, in a partial-year continuing resolution.  Defendants had no lawful justification for refusing to apportion, obligate, and disburse that $105 million in funding upon its appropriation—as the government has invariably done in the past.  Indeed, as this Court has explained, the NED Act requires that the State Department "shall" disburse the Endowment's appropriated funding so as to "enable the Endowment to carry out its purposes." 22 U.S.C. § 4412(a).  Defendants' withholding of the $105 million for four months after its November 2025 appropriation—when the Endowment last received *any* funding in fiscal year 2025—violates that

---

[5] *Compare* National Endowment for Democracy, *OpenOMB*, https://openomb.org/file/11469436 (apportionment account for the Endowment's appropriation). *with* Democracy Fund, *OpenOMB*, https://openomb.org/file/11505625 (apportionment account for Democracy Fund appropriation for DRL).

clear statutory mandate.  As described further below, Defendants' withholding of funding has caused, and is causing, the Endowment severe and irreparable harm.

31.     Defendants' course of conduct since January 2025—and, strikingly, since this Court entered its injunction in August 2025—leaves no doubt that Defendants remain committed to withholding the Endowment's funding based on their policy disagreement with the Endowment's congressionally recognized activities.  Even after the injunction, Defendants have continued to interfere with the Endowment's funding by any available means.  And there is no reason to believe that their reasons for doing so have changed.  In 2025, Defendants stated publicly that the Endowment's activities did not align with "administration priorities."  This Court subsequently found that the record demonstrated that Defendants were withholding the Endowment's funding because of the administration's policy disagreements, in violation of the NED Act.  ECF No. 46 at 7.  Even *after* the preliminary injunction order, however, Defendants instituted an audit of the Endowment for the unlawful purpose of ensuring that the Endowment's activities aligned with Administration "priorities."  ECF No. 48 (Joint Status Report of Aug. 22, 2025).  And now Defendants continue to withhold the Endowment's 2026 funding without any justification.  Nothing in Defendants' subsequent shifting and misleading representations to this Court and to the Endowment suggests any other justification for their continued withholding of the Endowment's funding.

    **B.    Supplemental Description of Harm to the Endowment**

32.     Defendants' denial of funding has, once again, begun to inflict irreparable harm on the Endowment, which grows more severe with each passing day.

33.     The Endowment is experiencing operational and programmatic consequences. The withholding of its fiscal year 2026 appropriated funding prevents the Endowment from obligating 60% of its grant commitments to date.

34.    Without those funds, the Endowment's grantees and partners face disruption to critical activities, such as reporting on war-related developments in Ukraine and Iran, providing urgent legal and humanitarian support to political prisoners, supporting ongoing political openings in Bolivia, Syria, Bangladesh, and Nepal, ensuring the survival of citizen groups and independent media outlets in repressive regimes, defending religious freedom and freedom of expression, documenting human rights violations, and conducting election monitoring. These activities are time-sensitive, and if the work is delayed, it cannot be completed.

35.    Furthermore, the Endowment continues to monitor developments in Iran, Cuba, and Venezuela. The Endowment needs access to fiscal year 2026 funding as it conducts scenario planning and prepares to respond depending upon how these fast-moving situations develop.

36.    Disruptions in funding to the Endowment's partners operating in authoritarian environments risks exposing their connection to the Endowment, inviting legal and other more dangerous reprisals from authoritarian governments that oppose their work.

37.    The Endowment's inability to meet its grant commitments also threatens its reputation. Organizations around the world seek out the Endowment due to its well-established reputation for reliability, transparency, consistency, security-consciousness, and partnership. That reputation is critical to the Endowment's ability to engage productively with partners worldwide and, in turn, to pursue its congressionally recognized mission. Particularly against the backdrop of the last year of turmoil and uncertainty, yet another disruption would compound reputational harms the Endowment has already suffered, compromise the work the Endowment has done to restore trust, and in the process severely undermine the Endowment's mission.

38.    The Endowment's operations depend significantly on consistent and predictable funding to enable strategic planning, effective prioritization, long-term grantmaking

commitments, staffing stability, and the fulfillment of contractual and fiduciary obligations. Further funding disruptions cause substantial uncertainty that prevents the Endowment from engaging in these activities and maximizing the effectiveness of its appropriations.

39.    The lack of funding also impairs the ability of the Endowment's core institutes to operate.  The core institutes are just beginning to recover from the delayed funding in fiscal year 2025, and another disruption risks setting back the progress they have made to stabilize operations, inflicting further operational and reputational damage.  Without confidence in their funding, the core institutes are unable to make long-term programmatic and staffing decisions essential to delivering time-sensitive programs in countries with fragile political openings around the world, from Bolivia and Bangladesh to Syria and Nepal.

## SUPPLEMENTAL CLAIMS FOR RELIEF

### COUNT TWELVE

### APA, 5 U.S.C. § 706(2)(A)–(C)

### (Against All Defendants)

40.    The Endowment realleges and incorporates by reference all prior and subsequent paragraphs and all paragraphs in the Amended Complaint (ECF No. 35).

41.    The Administrative Procedure Act (APA) provides that a court "shall" "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" "contrary to constitutional right, power, privilege, or immunity[,]" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]"  5 U.S.C. § 706(2)(A)–(C).

42.    Defendants' withholding of the Endowment's congressionally appropriated funding is final agency action reviewable under 5 U.S.C. § 704.  The denial of funding is

reviewable "final agency action."  5 U.S.C. § 704.  "[A]gency action" includes an agency's "denial" of "recognition" to a "claim" or "right"; the "denial" of a "grant of money"; and the "failure to act" or "withholding" with respect to claims, rights, and grants of money.  5 U.S.C. § 551(10), (11), (13).  Defendants' actions are "final" because they are the "functional equivalent" of an express denial of payment—the consequences of Defendants' withholding of the Endowment's funds are identical to the consequences of an express statement of denial.  *See Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 192 (D.D.C. 2024) (citation omitted).  Defendants' assertion that they may consider "full or partial rescission under the Impoundment Control Act" and "other lawful options" for withholding funding, ECF No. 59 at 1 (Joint Status Report of Feb. 19, 2026), does not change the fact that Defendants have made a final decision to withhold the $105 million appropriated to the Endowment in the continuing resolution in November 2025 while Defendants attempt to find a legal rationale that could justify the withholding.

43.    Defendants' actions are contrary to law and in excess of statutory authority.  The statutory scheme creates a mandatory, non-discretionary duty for Defendants to apportion, obligate, disburse, and otherwise make available the Endowment's congressionally appropriated funds.  22 U.S.C. § 4412(a); Further Consolidated Appropriations Act, Pub. L. No. 118-47 (2024); 31 U.S.C. §§ 1512, 3325.  That scheme prohibits the Executive Branch from imposing extra-statutory requirements on the Endowment's funds and withholding funding based on the Executive Branch's policy priorities.  22 U.S.C. § 4412(a); ECF No. 46 at 10 (P.I. Opinion).  It also prevents the Executive Branch from interfering with the Endowment's statutory mandate that annual funding must "enable the Endowment to carry out its purposes."  22 U.S.C. § 4412(a); ECF No. 46 at 8 (P.I. Opinion).  Defendants' decision to withhold from apportionment

~$105 million of the Endowment's congressionally appropriated funds for over four months violates Defendants' statutory obligations.

44.    Defendants' actions are also contrary to the United States Constitution because they violate the Separation of Powers, as well as the Take Care Clause, the Appropriations Clause, the Spending Clause, and the Presentment Clause of the United States Constitution.

45.    Defendants' actions are also arbitrary and capricious because Defendants have failed to provide a reasoned explanation for their actions; Defendants have failed to consider reliance interests of the Endowment, its core institutes, and its longstanding grantees; Defendants have relied on factors which Congress did not intend for them to consider; and because Defendants' actions threaten the Endowment's continued existence, in direct contravention of Congress's expressed intention that the Endowment shall use its appropriated funds to fulfill its mandate as reflected in the NED Act.

46.    Judicial relief is warranted to ensure that Defendants do not unlawfully withhold the Endowment's appropriations.  Defendants are currently unlawfully withholding the Endowment's appropriations by refusing to apportion and obligate the funds that Congress specifically appropriated for obligation to the Endowment.  In addition, prior to the filing of the Complaint, ECF No. 1, and prior to this Court's preliminary injunction, ECF No. 45, Defendants withheld the Endowment's appropriations by refusing to apportion, obligate, and/or disburse the funds that Congress specifically appropriated for obligation to the Endowment.  In light of the current withholding of the Endowment's funding and the broader Executive Branch efforts to interfere with the Endowment's mission, there is every reason to think that Defendants' wrongful withholding of the Endowment's funds will persist and recur absent judicial relief.

47.     Absent relief from this Court, the Endowment will face irreparable harm, including to its ability to fulfill its mission and to its reputation as a reliable source of funding for democracy and freedom around the world.

48.     This Court should hold unlawful, enjoin, and set aside Defendants' unlawful withholding of the Endowment's appropriated funds.

## <u>COUNT THIRTEEN</u>

**APA, 5 U.S.C. § 706(1)**

**(Against All Defendants)**

49.     The Endowment realleges and incorporates by reference all prior and subsequent paragraphs and all paragraphs in the Amended Complaint (ECF No. 35).

50.     The APA provides that a reviewing court "shall" "compel agency action unlawfully withheld or unreasonably delayed[.]"  5 U.S.C. § 706(1).

51.     OMB has a non-discretionary duty to apportion the Endowment's appropriated funds to the State Department for obligation to the Endowment.  31 U.S.C. § 1512.

52.     OMB has not complied with that mandatory duty as it relates to the Endowment's fiscal year 2026 funding.

53.     The Department of State has a non-discretionary duty to make an annual grant to the Endowment "to enable the Endowment to carry out its purposes."  22 U.S.C. § 4412(a); *see* Further Consolidated Appropriations Act, Pub. L. No. 118-47 (2024).

54.     The Department of State has not complied with that mandatory duty as it relates to the Endowment's fiscal year 2026 funding.

55.     The Department of the Treasury has a non-discretionary duty to disburse the funds in its charge upon receipt of a properly executed voucher.  31 U.S.C. § 3325.  When HHS

exercises delegated authority to disburse federal funds, 31 U.S.C. §§ 3321(a), 3322, it has the same non-discretionary duty.

56.     Treasury and HHS have not complied with that mandatory duty as it relates to the Endowment's fiscal year 2026 funding.

57.     Defendants' failure to apportion, obligate, and disburse the Endowment's fiscal year 2026 funding amounts to both unlawfully withheld agency action and unreasonably delayed agency action.

58.     Defendants' actions are also contrary to the United States Constitution because they violate the Separation of Powers, as well as the Take Care Clause, the Appropriations Clause, the Spending Clause, and the Presentment Clause of the United States Constitution.

59.     Judicial relief is warranted to ensure that Defendants do not unlawfully withhold the Endowment's appropriations.  Defendants are currently unlawfully withholding the Endowment's appropriations by refusing to apportion and obligate the funds that Congress specifically appropriated for obligation to the Endowment.  In addition, prior to the filing of the Complaint, ECF No. 1, and prior to this Court's preliminary injunction, ECF No. 45, Defendants withheld the Endowment's appropriations by refusing to apportion, obligate, and/or disburse the funds that Congress specifically appropriated for obligation to the Endowment.  In light of the current withholding of the Endowment's funding and the broader Executive Branch efforts to interfere with the Endowment's mission, there is every reason to think that Defendants' wrongful withholding of the Endowment's funds will persist and recur absent judicial relief.

60.     Absent such relief, the Endowment will face irreparable harm, including to its ability to fulfill its mission and to its reputation as a reliable source of funding for democracy and freedom around the world.

61. The Court should thus compel Defendants to apportion, obligate, disburse, and otherwise make available the funds that Congress appropriated for grants to the Endowment.

## SUPPLEMENTAL PRAYER FOR RELIEF

Wherefore, the Endowment prays that this Court:

A. Order Defendants to cease their unlawful refusal to apportion, obligate, disburse, and otherwise make available the Endowment's funds;

B. Declare unlawful and set aside the Defendants' unlawful refusal to apportion, obligate, disburse, and otherwise make available the Endowment's congressionally appropriated funds as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A), contrary to constitutional right, power, privilege, or immunity under 5 U.S.C. § 706(2)(B), and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right under 5 U.S.C. § 706(2)(C);

C. Issue a preliminary injunction barring Defendants from withholding, blocking, reserving, or otherwise interfering with payment of the Endowment's appropriated funds, including by interfering with the apportionment, obligation, and ultimate disbursement of such funds;

D. Issue a permanent injunction barring Defendants from withholding, blocking, reserving, or otherwise interfering with payment of funds Congress appropriates for grants to the Endowment, including by interfering with the apportionment, obligation, and ultimate disbursement of such funds;

E. Order Defendants to file a status report with the Court within 24 hours of entry of a preliminary injunction, and at regular intervals thereafter, confirming the apportionment,

obligation, and regular disbursement of the Endowment's appropriated funds and reporting all steps that Defendants have taken to comply with the Court's preliminary injunction; and

F.      Grant such other relief as the Court deems necessary, just, and proper.

Dated: March 6, 2026                    Respectfully submitted,

                                        */s/ Donald B. Verrilli, Jr.*
                                        Donald B. Verrilli, Jr. (D.C. Bar No. 420434)
                                        Ginger D. Anders (D.C. Bar No. 494471)
                                        Jeremy S. Kreisberg (D.C. Bar No. 1048346)
                                        Helen E. White (D.C. Bar No. 1741368)
                                        Esthena L. Barlow (D.C. Bar No. 90000252)
                                        MUNGER, TOLLES & OLSON LLP
                                        601 Massachusetts Avenue NW, Suite 500E
                                        Washington, D.C. 20001
                                        (202) 220-1100
                                        Donald.Verrilli@mto.com
                                        Ginger.Anders@mto.com
                                        Jeremy.Kreisberg@mto.com
                                        Helen.White@mto.com
                                        Esthena.Barlow@mto.com

                                        Gabriel M. Bronshteyn (*pro hac vice*)
                                        MUNGER, TOLLES & OLSON LLP
                                        560 Mission Street, Twenty-Seventh Floor
                                        San Francisco, California 94105
                                        (415) 512-4000
                                        Gabriel.Bronshteyn@mto.com

                                        *Attorneys for the National Endowment for Democracy*