# EXHIBIT 1

```
 1              BEFORE THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3   NATIONAL ENDOWMENT FOR             .
     DEMOCRACY,                         .  Case Number 25-cv-648
 4                                      .
              Plaintiff,                .
 5                                      .
         vs.                            .
 6                                      .
     UNITED STATES OF AMERICA,          .  Washington, D.C.
 7   et al.,                            .  February 25, 2026
                                        .  2:05 p.m.
 8            Defendants.               .
     - - - - - - - - - - - - - - - - -
 9

10               TRANSCRIPT OF STATUS CONFERENCE
            BEFORE THE HONORABLE DABNEY L. FRIEDRICH
11                UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   For the Plaintiff:          JEREMY KREISBERG, ESQ.
                                 Munger, Tolles & Olson LLP
15                               601 Massachusetts Avenue Northwest
                                 Suite 500E
16                               Washington, D.C. 20001

17   For the Defendants:         JOSHUA SCHOPF, ESQ.
                                 U.S. Department of Justice
18                               Civil Division
                                 1100 L Street Northwest
19                               Washington, D.C. 20005

20

21   Official Court Reporter:    SARA A. WICK, RPR, CRR
                                 333 Constitution Avenue Northwest
22                               Room 4704-B
                                 Washington, D.C. 20001
23                               202-354-3284

24
     Proceedings recorded by stenotype shorthand.
25   Transcript produced by computer-aided transcription.
```

P R O C E E D I N G S

(Call to order of the court.)

COURTROOM DEPUTY: We are on the record in Civil Action 25-648, National Endowment for Democracy versus the United States of America, et al.

Starting with plaintiff's counsel, please approach the podium and state your appearance for the record.

MR. KREISBERG: Thank you, Your Honor.

This is Jeremy Kreisberg from Munger, Tolles & Olson on behalf of the National Endowment for Democracy.

THE COURT: Good afternoon.

MR. SCHOPF: Good afternoon, Your Honor.

It's Joshua Schopf for the government.

THE COURT: All right. Mr. Schopf.

So I scheduled this status hearing at the request of the plaintiffs, the Endowment. Let me hear first whether you all have any updates that you can share with the Court. I can understand your frustration.

MR. KREISBERG: Thank you, Your Honor.

We do not have any updates since our filing on February 20. We very much appreciate Your Honor scheduling this status conference.

As our filing indicates, there are really two main reasons that we were hoping to have this appearance before you today. The first is to get direct answers to questions that we feel are

1    going unanswered in these joint status reports, including
2    because it seems that the filing that was made on February 9 was
3    either false or misleading and has left us with an absence of an
4    explanation for why funding that was appropriated last November
5    still has not been apportioned, obligated, and disbursed.
6          And then relatedly, to inform whether motion proceedings
7    might be necessary.  Again, it's been our objective for months
8    now to try to resolve any issues regarding the Endowment's
9    funding without having to come back to this Court, to point to
10   the reasoning in Your Honor's preliminary injunction opinion and
11   to ensure that the Endowment receives the funding that Congress
12   appropriates without having to come back to this Court, but
13   we're growing concerned that may not be possible.
14              THE COURT:  Okay.  All right.  Thank you,
15   Mr. Kreisberg.
16        Mr. Schopf?  I thought you were going to be providing an
17   additional filing in response to the plaintiff's supplemental
18   filing.
19        What can you tell me?
20              MR. SCHOPF:  Yes.  Unfortunately, I don't -- there's
21   not much more we can update the Court.
22              THE COURT:  Can you explain the discrepancy between
23   the February 9th and the February 19th status reports?
24              MR. SCHOPF:  Yes.  Thank you.
25              THE COURT:  At best, there's been a shift; at worst,

1    they were misleading.
2            MR. SCHOPF:  We don't accept that it was misleading.
3    It certainly was not our intent to mislead.
4            THE COURT:  Well, were you are working on allotting
5    funds to the Endowment on February 9?
6            MR. SCHOPF:  Well, that's not actually what we said in
7    our statement.
8            THE COURT:  Well, what should the Court have
9    understood your statement to mean at that time?
10           MR. SCHOPF:  Exactly what we said there.
11           THE COURT:  Which -- remind me what --
12           MR. SCHOPF:  We talked about -- yes.  The language
13   that we used was that we were working on the allotment of the
14   fiscal year 2026 funding to state bureaus, including the bureau
15   that the funding for the Endowment, you know, goes into, which
16   is DRL.
17           THE COURT:  So the appropriated funds didn't go into
18   the right place?  I don't understand.
19           MR. SCHOPF:  I'm not sure I understand your question.
20           THE COURT:  I'm talking about the continuing
21   resolution.  Where did those funds --
22           MR. SCHOPF:  As far as the continuing resolution goes,
23   we did explain in there that we had not obligated -- we had
24   not -- for the entire -- for that entire bureau, which is the
25   Bureau of Democracy, Human Rights, and Labor, State did not

```
 1    allot any of the continuing resolution funding.  It wasn't
 2    specific to the Endowment.  Because they had concerns over
 3    full-year funding -- this is just what we said.  Because they
 4    had concerns, they had uncertainties about what was going to be
 5    in the full-year funding, they didn't allot any of that funding.
 6         But the bottom --
 7              THE COURT:  I want to make sure, with respect to the
 8    Endowment, I understand.
 9         So as I understand, Congress, as a part of a continuing
10    resolution, appropriated 105 million on November 12; correct?
11              MR. SCHOPF:  Correct, but that is all now superseded
12    by the full-year funding.
13              THE COURT:  Okay.  But let's start with that.
14         Why has that funding not been obligated to the Endowment?
15    What's the holdup with that funding?
16              MR. SCHOPF:  The only thing I can tell you is what we
17    said in our --
18              THE COURT:  But help me understand.  It doesn't make
19    sense to me.
20         Congress has made a decision that 105 million is going to
21    the Endowment.  And the government receives that money but
22    doesn't allot it to the Endowment because why?
23              MR. SCHOPF:  Because of uncertainties over full-year
24    funding.  There were uncertainties that that money was going to
25    be pulled back by Congress in the full-year -- I can assume --
```

1   only assume that the concern was that there would be less money
2   allotted in the full-year funding.
3            THE COURT:  Did you treat all funding that was a part
4   of that continuing resolution in the same way, or just the
5   Endowment funding?
6            MR. SCHOPF:  All funding to that -- the bureau where
7   the Endowment's funding resides.  It does not go directly to the
8   Endowment.  It goes into, you know, accounts in this bureau, the
9   Bureau of Democracy, Human Rights, and Labor, and the Endowment
10  draws from those accounts.  They're funding accounts.  That is
11  my understanding of it as explained to me by the agency.  So it
12  was not specific to NED.  It was for the entire bureau.  The
13  entire bureau did not receive continue resolution funding.
14       But the bottom line is now we have full-year funding, and
15  the full-year --
16           THE COURT:  What's the holdup?
17           MR. SCHOPF:  Well, the full-year funding, the
18  appropriations law currently for the full year fiscal 2026
19  funding, there is a 60-day period for the agency to allot the
20  funding.  That is the language of the bill.  The bill was
21  enacted on February 3.  I can read you the language.
22           THE COURT:  No, I understand.  So you're taking steps
23  now to allot the funding to the Endowment?  Is that what I
24  should take away from what you're saying?
25           MR. SCHOPF:  No, the steps we are taking -- we have

1  not determined what we are going to do.  We are using this
2  period of time to determine what we are going to do.  As we said
3  in the February 19 status report, that might be allotting the
4  funding; it might be a rescission proposal, sending a special
5  message to Congress.  That is a possibility, and we're not
6  hiding that.  That was in our status report.
7           THE COURT:  What else are you considering?  You've
8  said reference to "any other lawful response."  What else beyond
9  rescission --
10          MR. SCHOPF:  The only other thing I know of is
11 possible impoundment, in whole or in part, of some of those
12 funds under Article II.
13          THE COURT:  And at what point will you have answers to
14 these questions?
15          MR. SCHOPF:  We propose March 15 -- sorry, March 16.
16 We propose another report on March 16.
17          THE COURT:  And you will have an answer on March 16?
18 Because we went through this last year, sort of slow-walking,
19 and in the end, the funding wasn't --
20          MR. SCHOPF:  I certainly appreciate that.  I would do
21 my best to get that answer.
22          THE COURT:  Okay.  Well, I mean, I hate to say it, but
23 from the plaintiff's perspective, you know, plaintiff may just
24 have to take legal action, because you're putting them in the
25 untenable position they were in last year when it comes to their

```
1      grants.
2              MR. SCHOPF:  I understand -- sorry.
3              THE COURT:  And this is the same -- seems to be
4      similar playbook, and they can't make decisions.
5              MR. SCHOPF:  The plaintiffs are entitled to do what
6      they want, obviously.  That's up to them.
7              THE COURT:  Well, I think they're just looking for
8      clarification and information so they can take steps
9      accordingly.
10          And given that the funding all the way back to November has
11     been there, it seems that the administration would have a plan
12     by now.
13             MR. SCHOPF:  As we said in the status report, there
14     is -- no determination has been made.  I mean, I wish I had a
15     different answer for you, but that is the answer.
16             THE COURT:  So your position is that the statement you
17     made in the February 9th report was not intended to be read as
18     the Court read it and as the plaintiff read it, which was that
19     you were actively working on allotting the funding to the
20     Endowment; is that what you're telling me?
21             MR. SCHOPF:  That's correct.
22             THE COURT:  Okay.  And even though the plaintiff's
23     portion of the report thanked you for making that representation
24     and even though the Court asked for the specific steps to be
25     itemized in a future report, you made no effort to correct that
```

```
1    obvious misunderstanding that both the Court and the plaintiff
2    had?
3              MR. SCHOPF:  Well, we had another report on
4    February 19, and we put our statement in as to what --
5              THE COURT:  That was ten days later.  We were clearly
6    operating under the assumption that you were taking steps --
7              MR. SCHOPF:  It did not occur to us that we had to
8    correct a misimpression of the plaintiffs.  It was not what we
9    said.
10             THE COURT:  Well, and the Court as well.
11             MR. SCHOPF:  Well, I apologize, then.  There was
12   certainly no effort to, you know, leave a misimpression out
13   there.
14             THE COURT:  All right.  Let me hear from the
15   plaintiff.  You can have a seat.
16        It seems that you're not going to get answers.  You might
17   get answers on the 15th, but we went through the same sort of
18   process a year ago.
19             MR. KREISBERG:  We very much appreciate that, Your
20   Honor.
21             THE COURT:  I mean, you can file a new case.  You can
22   amend the complaint.  You can seek emergency relief.  You have
23   all of those avenues available to you.  And to the extent it's
24   in this case, the Court stands ready to respond to those.
25        But I can't make him answer questions, and I am as
```

1    frustrated as you are about the responses.
2             MR. KREISBERG:  We very much appreciate that, Your
3    Honor, and it does seem, at a minimum, that there has been a
4    decision made to withhold funds, again that were appropriated
5    last November, and we will certainly consider every legal option
6    available to us, as indicated, and we will get those on file as
7    soon as possible.
8             THE COURT:  Okay.  Can you tell me, do you expect to
9    amend the complaint?  What's your --
10            MR. KREISBERG:  I will have to consult with our
11   clients, of course.  But I think that perhaps because everything
12   that we would be arguing about happened after the event
13   described in the amended complaint that we filed before the
14   preliminary injunction, perhaps a supplemental complaint might
15   be the most straightforward.
16            THE COURT:  A new case?
17            MR. KREISBERG:  Well, I suppose I was thinking a
18   supplemental complaint in this case might be an appropriate way
19   to handle it.  But, of course, if Your Honor would prefer one
20   consolidated amended complaint, we can, of course, do that
21   instead.
22            THE COURT:  I mean, the government intends to file a
23   motion to dismiss on or around the same date they want to give
24   answers.  So I guess on that date, we will learn more.
25            MR. KREISBERG:  Considering -- we are beginning to

```
 1    experience harms right now, as we described in our report.  So
 2    I'm not sure that we can wait until that mid-March date.  But I
 3    will, of course, consult with our clients and try to conserve
 4    this Court's resources as much as possible.
 5              THE COURT:  I would appreciate that.  And the harms
 6    are your inability to respond to the grants?
 7              MR. KREISBERG:  It's very similar to what we described
 8    in the preliminary injunction motion.  But we have a lot of
 9    approved commitments that we plan to make, which is exactly what
10    the Endowment is charged with doing under the statute, to fund
11    really important democracy and freedom work around the globe
12    through NGOs.  The Endowment's board meets to go through a
13    rigorous process.  That's been planned since the beginning of
14    the year.
15         And at this point, there are approved commitments that
16    would go unfunded because there has now been no funding provided
17    to the Endowment since this Court's preliminary injunction order
18    requiring the disbursal of $95 million.  And that's just an
19    unprecedented funding freeze that the Endowment has never had to
20    encounter before.
21              THE COURT:  Are you also anticipating staff layoffs,
22    as you did last year?
23              MR. KREISBERG:  I am uncertain about any further staff
24    layoffs at this time.  But it may depend on exactly the extent
25    of the defendants' actions with respect to our funding.
```

```
 1              THE COURT:  Are there any additional questions you
 2    have based on Mr. Schopf's answers?
 3              MR. KREISBERG:  No, thank you, Your Honor.  We
 4    appreciate the questions that were asked and the effort to try
 5    to get answers to those questions.
 6              THE COURT:  All right.
 7         All right, then.  Thank you, all.
 8              (Proceedings adjourned at 2:18 p.m.)
 9
10    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
11
12              CERTIFICATE OF OFFICIAL COURT REPORTER
13
14         I, Sara A. Wick, certify that the foregoing is a
15    correct transcript from the record of proceedings in the
16    above-entitled matter.
17
18
19
20    /s/ Sara A. Wick                    February 26, 2026
21    SIGNATURE OF COURT REPORTER         DATE
22
23
24
25
```