**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NATIONAL ENDOWMENT FOR DEMOCRACY, | : : : : | No. 1:25-cv-648-DLF |
| *Plaintiff,* | : : | |
| v. | : : | |
| UNITED STATES OF AMERICA, et al., | : : | |
| *Defendants.* | : : : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

1

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

LEGAL STANDARD.................................................................................................................. 5

ARGUMENT ............................................................................................................................... 6

I.     A Preliminary Injunction Is Unnecessary Since Defendants Intend to Apportion FY 2026 Funding If NED Confirms It Will Comply with its Statutory Requirements. .......................................................................................................... 6

II.    NED's APA Based Funding Claims Fail.......................................................................... 7

      A.    NED's Claims Related to Full-Year Funding Are Premature ............................... 7

      B.    NED's Partial-Year Funding Claims Fail ............................................................. 9

      C.    NED Has No Cognizable Reliance Interest .......................................................... 11

      D.    Plaintiffs Are Not Entitled to Relief Based on an "Unlawfully Withheld" or "Unreasonably Delayed" Claim. ......................................................................... 11

III.   Plaintiff is Unlikely to Succeed on its Constitutional Claims. ........................................ 12

IV.   Plaintiff Cannot Establish Irreparable Harm....................................................................... 13

V.    The Balance of Equities and Public Interest Do Not Favor a Preliminary Injunction. ...................................................................................................................... 16

CONCLUSION............................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Alcresta Therapeutics, Inc. v. Azar*,
    318 F. Supp. 3d 321 (D.D.C. 2018) .................................................................................. 15

*Am. Meat Inst. v. U.S. Dep't of Agric.*,
    968 F. Supp. 2d 38 (D.D.C. 2013) .................................................................................... 15

*Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.*,
    No. CV 25-298 (RDM), 2025 WL 1852762 (D.D.C. July 6, 2025), *appeal filed*, No. 25-5254
    (D.C. Cir. docketed July 16, 2025) .................................................................................12-13

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
    897 F.3d 314 (D.C. Cir. 2018) ........................................................................................... 5

*\*Bennett v. Spear*,
    520 U.S 154 (1997) ......................................................................................................... 7, 8

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ......................................................................................... 13

*Church v. Biden*,
    573 F. Supp. 3d 118 (D.D.C. 2021) .................................................................................. 16

*Citizens for Resp. & Ethics in Wash. v. U.S. Ctrs. for Disease Control & Prevention*,
    No. CV 25-1020 (TJK), 2025 WL 1580809 (D.D.C. June 4, 2025)................................... 15

*\*Dalton v. Specter*,
    511 U.S. 462 (1994)................................................................................................... 12, 13

*Davis v. Pension Benefit Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) ....................................................................................... 16

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021)........................................................................................................... 8

*Grand Canyon Air Tour Coal. v. FAA*,
    154 F.3d 455 (D.C. Cir. 1998) ......................................................................................... 12

*\*Hi-Tech Pharmacal Co. v. FDA*,
    587 F. Supp. 2d 1 (D.D.C. 2008) ................................................................................ 13, 16

*In re Aiken Cnty.*,
    725 F.3d 255 (D.C. Cir. 2013) ......................................................................................... 11

*In re Am. Fed'n of Gov't Emps., AFL-CIO,*
  837 F.2d 503 (D.C. Cir. 1988) ........................................................................ 11

*In re Am. Rivers & Idaho Rivers United,*
  372 F.3d 413 (D.C. Cir. 2004) ........................................................................ 12

*Kim v. FINRA,*
  698 F. Supp. 3d 147 (D.D.C. 2023), *appeal dismissed*, No. 23-7136, 2025 WL 313965 (D.C.
  Cir. Jan. 27, 2025) ............................................................................................ 16

*\*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ............................................................................ 14

*Miller v. Gruenberg,*
  No. 22-5256, 2023 WL 6206247 (D.C. Cir. 2023) .......................................... 6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................................ 9

*Nat'l Mining Ass'n v. Jackson,*
  768 F. Supp. 2d 34 (D.D.C. 2011) .................................................................. 13

*New Life Evangelistic Ctr., Inc. v. Sebelius,*
  753 F. Supp. 2d 103 (D.D.C. 2010) ................................................................ 10

*New Mexico v. Musk,*
  769 F.Supp.3d 1 (D.D.C. 2025) ...................................................................... 16

*Nken v. Holder,*
  556 U.S. 418 (2009) ........................................................................................ 16

*Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Hum. Servs.*,
  No. CV 25-1334 (TJK), 2025 WL 1768100 (D.D.C. June 26, 2025), *dismissed by* No. 25-
  5238, 2025 WL 2178480 (D.C. Cir. July 29, 2025) ...................................... 14

*Safari Club Int'l v. Jewell,*
  47 F. Supp. 3d 29 (D.D.C. 2014) .................................................................... 13

*Trump v. Thompson,*
  20 F.4th 10 (D.C. Cir. 2021) ............................................................................ 5

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ....................................................................................... 5, 16

*\*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ............................................................. 13, 14, 15

iii

**Statutes**

2 U.S.C. §§ 681-688 ................................................................................................................ 4

5 U.S.C. § 704 ........................................................................................................................ 7

5 U.S.C. § 706(1) ................................................................................................................... 2

22 U.S.C. § 4411 ................................................................................................................... 2

22 U.S.C. § 4412(a) .............................................................................................................. 3

22 U.S.C. § 4413 ........................................................................................................... 3, 6, 8

22 U.S.C. § 4414(b) ........................................................................................................... 3, 6

National Endowment for Democracy Act ("NED Act"),
   22 U.S.C. §§ 4411-16 ..................................................................................................... 1, 2

Consolidated Appropriations Act, 2026,
   Pub. L. No. 119-75, div. F, tit. I, 140 Stat. 173 ..................................................... 3, 7, 9

Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans
   Affairs, and Extensions Act, 2026,
   Pub. L. 119-37, div. A, § 106, 139 Stat. 495, 497 (2025)....................................... 1, 9

**INTRODUCTION**

Defendants respectfully submit this opposition to Plaintiff's Motion for a Preliminary Injunction, ECF No. 63 (Plaintiff's Motion). Plaintiff seeks an order enjoining Defendants "from withholding, blocking, reserving, or otherwise interfering with payment of the $105,273,000 of funds appropriated to the Endowment in the continuing resolution for fiscal year 2026, Pub. L. No. 119-37 (2025)." [Proposed] Order Granting Pl.'s Mot. for Prelim. Inj. at 1, ECF No. 63-3. The Court should deny Plaintiff's Motion for several reasons.[1]

At the outset, the facts on the ground have significantly changed since Plaintiff filed its motion. To begin, the State Department explained by letter to Plaintiff on March 13, 2026, that Defendants are prepared to apportion and obligate Plaintiff's funding prior to the statutory deadline of April 4, 2026, assuming that Plaintiff agrees to abide by the statutory requirements of the National Endowment for Democracy Act ("NED Act"), 22 U.S.C. §§ 4411-16. And today OMB apportioned to the State Department the full amount ($315,000,000) of FY26 funds for grants to NED (*see* footnote 2). As such, there is no need for a preliminary injunction.

Nor can Plaintiff show a likelihood of success on the merits in any event. At their core, Plaintiff's claims fail because Defendants do not yet have to apportion or obligate the funds at issue—by statute, Defendants have until April 4 to apportion such funds. Thus, Defendants have neither acted contrary to law nor have they taken a reviewable agency action (nor do they need to until April). And as for Plaintiff's arbitrary and capricious claims, Defendants acted reasonably in waiting to issue the relevant funds to NED. That is so because (1) the State Department is

---

[1] In any event, defendants HHS, Robert F. Kennedy, Jr., and Melissa Bruce play no role in the funding decisions at issue in this case. Instead, they operate the Payment Management System, which is the system through which payments are processed once those payments are approved by the awarding agency (here, the State Department). Thus, no PI should extend to these defendants.

seeking NED's commitment that it will comply with the relevant statutory requirements, including the requirement to consult with State under certain circumstances; (2) because it cannot be arbitrary and capricious to wait until the deadline that Congress itself has set; and (3) with respect to funding authorized during the (now expired) continuing resolutions, because it was reasonable to hold off on partial-year funding while there were uncertainties as to how much (if any) funding NED would receive in the full year appropriations bill.  All of these actions were reasonable and reasonably explained.  And, to the extent that Plaintiffs have properly brought a 5 U.S.C. § 706(1) claim, it is not entitled to any relief, as the relevant statutory deadline has yet to occur.

Ultimately, none of the four factors informing whether a party is entitled to preliminary relief favors entry of an injunction here.  Plaintiff has made no showing of cognizable irreparable harm likely to result in the absence of preliminary relief; and the balance of equities and the public interest cut against the Plaintiff's request.

For all these reasons, the Court should deny Plaintiff's Motion.

## BACKGROUND

This case involves the funding of the National Endowment for Democracy (NED or the Endowment).  NED is a private, non-profit corporation, whose purposes are, *inter alia,* to encourage free and democratic institutions throughout the world through private sector initiatives and to encourage the establishment and growth of democratic development consistent with the "broad concerns of United States national interests." 22 U.S.C. § 4411.

Under the National Endowment for Democracy Act, 22 U.S.C. §§ 4411-16 ("NED Act"), Congress recognized the creation of the National Endowment for Democracy and provided that

the Department of State "shall make an annual grant to the Endowment to enable the Endowment to carry out its purposes." *Id.* § 4412(a).

Grants may be made to NED only if NED agrees to comply with "the requirements specified in the NED Act. *Id.* § 4413(a). Such requirements include that NED is subject to annual audits by the Department of State (as successor agency to the U.S. Information Agency). *Id.* § 4413(g). NED must also "consult with the Department of State on any overseas program funded by the Endowment prior to the commencement of the activities of that program." *Id.* § 4414(b).

For the current fiscal year, Congress first enacted a continuing resolution ("CR") for the period of October 1, 2025 to January 30, 2026 that funded NED at the same level as the prior fiscal year. On February 3, 2026, Congress enacted a full-year funding law for FY 2026. That law appropriates $315,000,000 for grants made by the Department of State to NED and provides that "funds appropriated under this heading shall be apportioned to the Endowment not later than 60 days after the date of enactment of this Act," *i.e.*, by April 4, 2026. Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, div. F, tit. I, 140 Stat. 173, 521.

On February 9, 2026, in response to an inquiry from the Court about CR funding, Defendants stated that they had "not yet obligated or disbursed" FY 2026 funding for grants to NED. Joint Status Report at 1, Feb. 9, 2026, ECF No. 58. Defendants noted that, "[d]uring the CR period, due to uncertainties over full year funding, the Department of State did not allot any FY 2026 funding to the Bureau of Democracy, Human Rights, and Labor (DRL), the bureau responsible for obligating funds to NED" and further explained that any "short-term appropriation, must be credited against any full year appropriation." *Id*. Defendants further

3

stated that now that full-year funding was enacted, Defendants were "working on the allotment of that funding to State bureaus, including DRL." *Id.*

On February 19, 2026, Defendants further explained that no determination had yet been made on the allotment of funding for grants to NED but committed that, by the statutory deadline of April 4, 2026, Defendants "will either apportion funding in the NED account"; "if so directed by the President, propose to Congress a full or partial rescission under the Impoundment Control Act, 2 U.S.C. §§681-688; or consider other lawful options." Joint Status Report at 1, Feb. 19, 2026, ECF No. 59. Defendants proposed the filing of a status report on March 16, 2026 to update the Court. *Id.* The Court held a status conference on February 25, 2026 and on that same day ordered the parties to file another joint status report on March 16, 2026. February 25, 2026 Minute Order.[2]

On March 13, 2026, the Department of State's Under Secretary for Public Diplomacy sent a letter to Mr. Damon Wilson, the president and CEO of NED. That letter explained that State's audit of NED uncovered concerns that some of NED's programming was undermining "the foreign policy, safety and prosperity of the United States" and that "audit and transparency mechanisms designed by Congress to guard against" such activity "appear to have been insufficiently observed." Letter from Sarah B. Rogers, Under Sec'y for Public Diplomacy, U.S. Dep't of State, to Damon Wilson, President & Chief Exec. Off., NED 1 (March 13, 2026) ("Rogers Letter") (attached as Exhibit 1).

---

[2] The Joint Status Report will be filed concurrently with this filing. That report summarizes the Rogers Letter and explains that if NED complies with its requests, State will work to obligate appropriated 2026 funding. Defendants also report that on March 16, 2026, OMB apportioned to the State Department the full amount ($315,000,000) of FY26 funds for grants to NED.

The Rogers Letter also indicated that the NED Act's consultation requirements were not being followed. Further, State's review of NED audit reports from prior fiscal years revealed "significant deficiencies in reporting adherence under the Federal Funding Accountability and Transparency Act (FFATA)." *Id.*

The Rogers Letter requested that NED confirm by March 25, 2026 that it will implement procedures to ensure compliance with the consultation requirements of section 4414(b); that it will otherwise comply with the statutory requirements contained in section 4413(a); and that it will provide to State a list of grant recipients and activities that NED intends to fund in FY 2026. *Id.* at 2.

Assuming confirmation of compliance by NED, State "will work to obligate appropriated 2026 funding" by the April 4 deadline. *Id.* at 2.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Accordingly, the moving party must "make a 'clear showing that four factors, taken together, warrant [such] relief'": (1) "likely success on the merits"; (2) "likely irreparable harm in the absence of preliminary relief"; (3) "a balance of the equities in its favor"; and (4) "accord with the public interest." *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 321 (D.C. Cir. 2018) (citation omitted). "The likelihood of success and irreparability of harm 'are the most critical' factors." *Trump v. Thompson*, 20 F.4th 10, 31 (D.C. Cir. 2021) (citation omitted). And the third and fourth factors merge when the government is a party.

## ARGUMENT

**I.    A Preliminary Injunction Is Unnecessary Since Defendants Intend to Apportion FY 2026 Funding If NED Confirms It Will Comply with its Statutory Requirements.**

The State Department—after identifying concerns that NED was not complying with statutory requirements, including the obligation to consult with the State Department before undertaking certain projects—asked NED to confirm that it will abide with its statutory requirements moving forward.  *See* Rogers Letter, Ex. 1.  These requests amount to nothing more than NED confirming that it will be abide by its statutory requirements under 22 U.S.C. § 4413(a) ("Endowment agrees to comply with the requirements specified in this section and elsewhere in this subchapter") and 22 U.S.C. § 4414(b) ("Endowment shall consult with the Department of State on any overseas program funded by the Endowment prior to the commencement of the activities of that program.").  Notably, the State Department is not imposing new requirements on NED, or exercising its own policy preferences, a concern previously identified by the Court.  PI Op. at 7, ECF No. 46.  Rather, it is simply ensuring that NED complies with the requirements that Congress has imposed for NED Act grants.

The Rogers Letter asked NED to respond to its requests by March 25, 2026.  Once NED confirms its compliance, Defendants "will work to obligate appropriated 2026 funding" prior to the April 4, 2026 deadline set by Congress.  Rogers Letter at 2.  Because this dispute may well be resolved without judicial involvement so long as NED confirms it will comply with its statutory obligations, there is no need for a preliminary injunction at this time.  *See, e.g.*, *Miller v. Gruenberg*, No. 22-5256, 2023 WL 6206247 at * 1 (D.C. Cir. 2023) (finding preliminary injunction unnecessary when government indicated that it was working to provide relief to Plaintiff).

6

**II.     NED's APA Based Funding Claims Fail**

Even to the extent that this dispute remains, Plaintiff is not entitled to relief—either on a theory that it must receive funding under the operative full-year appropriations law or its claim to partial-year funding under the now expired CR.

**A.   NED's Claims Related to Full-Year Funding Are Premature**

The full-year appropriations law appropriates $315,000,000 for grants made by the Department of State to NED and states that "funds appropriated under this heading shall be apportioned to the Endowment not later than 60 days after the date of enactment of this Act." Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, div. F, tit. I, 140 Stat. at 521.  That sixty-day period runs until April 4, 2026.

Because that deadline has yet to run, Defendants do not yet have an obligation to apportion the funds—and they have yet to apportion, or deny apportionment, of those funds to NED (though they have stated their intent to do so, assuming statutory criteria are satisfied). Thus, Defendants have not engaged in a reviewable agency action, much less reviewable agency action that is contrary to law.

Review under the APA is limited to "final agency action." 5 U.S.C. § 704.  To constitute final agency action, "the action must mark the 'consummation' of the agency's decisionmaking process" and it "must be one by which 'rights or obligations have been determined,' or from 'which legal consequences will flow.'"   *Bennett v. Spear*, 520 U.S 154, 177-178 (1997) (citations omitted).   Plaintiffs cannot meet this test.

As Defendants have made no final determination on the apportionment of FY 2026 funding for grants to NED, there has been no consummation of the agencies' decision-making

process.  Similarly, because Defendants have not yet reached any decision, no "rights or obligations have been determined." *Id*. (citation omitted).

Plaintiff buries its discussion of the current statutory language in a footnote deep in its brief.  Pl.'s Mem. in Supp. of its Mot. for a Prelim. Inj. ("Pl.'s Mem.") at 22, n.22, ECF No. 63-1.  In that footnote, NED argues that "Defendants cannot credibly claim that the 60-day language gives them *more* authority than they otherwise would have." *Id.*  Defendants do not so claim.  It is the plain language of the statute that governs here: Defendants clearly do not have a mandate to apportion funding until 60 days after the law's enactment.

To the extent any final, reviewable agency action has occurred at this time, Defendants have acted reasonably.  "The APA's arbitrary-and-capricious standard requires" only that an "agency action be reasonable," and "[j]udicial review under that standard is deferential[.]" *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

Once the full year appropriations act was enacted, Defendants proceeded to work on allotting funding to DRL, the bureau that obligates funds to NED.  And the full-year funding law gives Defendants until April 4, 2026 to apportion funding to NED so Defendants are not yet required to so apportion and thus have made no funding determinations.  Regardless, Defendants have now explained through the Rogers Letter that compliance with statutory requirements will likely lead to the apportionment of funding for grants to NED, so long as NED confirms it will comply with its statutory requirements for an annual grant.  This is not a new requirement; it is one that Congress explicitly imposed.  *See* 22 U.S.C. § 4413(a) ("Grants may be made to the Endowment under this subchapter only if the Endowment agrees to comply with the requirements specified in this section and elsewhere in this subchapter.").  And, as the State

Department has explained, it was reasonable to ensure that NED complies with those requirements given the issues that have occurred in the past. *See* Rogers Letter.

These bases were reasonable and reasonably explained—which is all the APA requires. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### B. NED's Partial-Year Funding Claims Fail

Plaintiff insists that, regardless of the full-year appropriations language, Defendants were required to apportion partial year funding based on the now-expired November 2025 CR. Pl.'s Mem. at 20-24. At the outset, that continuing resolution ("CR") itself has now expired since the full-year funding law has been enacted. Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act ("Consolidated Appropriations Extensions Act"), 2026, Pub. L. 119-37, div. A, § 106, 139 Stat. 495, 497 (2025) (providing the appropriations provided by the FY 2026 CR shall expire upon the enactment into law of an appropriation for any project or activity provided for in that CR); Consolidated Appropriations Act, 2026, Pub. L. 119-75, div. F, tit. I, 140 Stat. at 521 (providing full-year appropriations for State, including for grants to NED). Even so, that CR merely provides FY2026 funding pending a full-year act at the same rate and under the same conditions as the FY2025 level. *See* Continuing Appropriations Extensions Act, 139 Stat. 495. That CR set no specific deadline for apportioning the FY2026 funds and thus did not require agency action to occur at a specific point in time, and indeed, no agency action occurred.

But in any event, the CR has now been supplanted by the full-year appropriations act. That full-year act appropriates funds for grants to NED in FY2026 and future years, and now mandates a specific deadline for apportioning those funds, April 4. *See* Consolidated Appropriations Act, 2026, div. F, tit. I, 140 Stat. at 521. The $105,273,000 Plaintiffs presently

9

demand are no longer available from the CR, but are available as part of the $315,000,000 included in the full-year appropriations act.  The only operative deadline to apportion funding for grants to NED is thus April 4, 2026.

NED further suggests that some social media posts, mostly from former State Department employees, prove that Defendants are withholding funds for improper policy reasons.  Pl.'s Mem. at 17-20.  Not so.  Defendants have provided reasoned explanations for its actions; none are improper.  NED is entitled to disagree with Defendants' reasoning, but "mere disagreement cannot discharge its burden of establishing that the determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 133 (D.D.C. 2010).

Finally, Plaintiffs insist that Defendants are violating the NED Act by failing to make a grant that "enable[s] the Endowment to carry out its purposes."  Pl.'s Mem. at 23 (citation omitted).  But that language must be read in concert with the appropriations law, which in this case gives Defendants until April 4, 2026 to apportion funding for grants to NED.  Thus, it was Congress that determined that, for the "Endowment to carry out its purposes," funds must be apportioned by April 4, 2026.  As that date has yet to arrive, Defendants have violated no congressional directive and thus no law.

And, contrary to Plaintiff's assertions (Pl.'s Mem. at 25), the fact that Defendants have made different decisions in prior years as to how to apportion and obligate funding for grants to NED does not mean Defendants are acting unreasonably or contrary to law now, as the currently applicable law explicitly gives Defendants until April 4, 2026 to apportion any funds.  Similarly, Defendants are not relying "on political guesswork" as a basis for violating "existing legal mandates." Pl.'s Mem. at 26. (quoting PI Op. at 7).  The existing mandate does not require any

10

action by Defendants until April 4, 2026.  Thus, no mandate has been violated.  And *Aiken County*, Pl.'s. Mem at 26, involved an ongoing licensing process for disposal of nuclear waste, in which the Nuclear Regulatory Commission attempted to halt that process despite the availability of previously appropriated funds for the NRC's own use in considering the license application. *In re Aiken Cnty.*, 725 F.3d 255, 260 (D.C. Cir. 2013).  In that case, the NRC failed to act on the Department of Energy's license application within deadlines set by the Nuclear Waste Policy Act. *Id.* at 258-59.  Nothing of the sort is happening here and no equivalent deadlines have been ignored.  For all these reasons, Defendants' actions here are fully consistent with the NED Act and associated appropriation laws, are reasonable and reasonably explained.

### C.  NED Has No Cognizable Reliance Interest

NED's further claim that Defendants failed to address NED's reliance interests also falls flat.  Pl.'s Mem. at 26.  Congress itself resolved these reliance interests in receiving funding by setting a specific date by which that funding must be apportioned.  Where, as here, Congress has spoken, this Court is "not free to ignore that judgment and rewrite the statute to include a [different] timetable." *In re Am. Fed'n of Gov't Emps., AFL-CIO*, 837 F.2d 503, 506 (D.C. Cir. 1988).

And NED never persuasively explains why NED could not sufficiently engage in "strategic planning," Pl.'s Mem. at 26, absent a few months of appropriated funding.  NED knows the amount Congress appropriated and the date by which that funding must be apportioned—as well as its own statutory requirements.  That surely suffices for planning purposes.

11

### D. Plaintiffs Are Not Entitled to Relief Based on an "Unlawfully Withheld" or "Unreasonably Delayed" Claim.

Plaintiff claims a "nearly four month[]" delay in agency action amounts to an unlawful withholding or unreasonable delay. Pl.'s Mem. at 16. But again, no action is owed until April 4, 2026, so funds have not been unlawfully withheld or unreasonably delayed. Regardless, a four month delay bears no resemblance to the typical case where a lengthy delay in agency action leads to a finding of a 5 U.S.C. § 706(1) violation. Nor is there a "'*per se* rule as to how long' is too long to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (citation omitted); *see also Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 477-78 (D.C. Cir. 1998) (declining to order agency action notwithstanding a ten-year delay in issuing a rule and a 20-year delay in achieving the rule's statutory objective).

Here, not only has there been no lengthy delay or withholding, Plaintiff does not even plausibly allege any discrete agency action that the agencies are required to take, nor the violation of any specific, unequivocal command to apportion or obligate the appropriated funds prior to April 4, 2026.

## III. Plaintiff is Unlikely to Succeed on its Constitutional Claims.

Plaintiff's supplemental complaint does not add any independent constitutional claims. Rather, it states as part of a catch-all APA count that Defendants have violated the Separation of Powers, the Take Care Clause, the Appropriations Clause and the Presentment Clause. Suppl. Compl. ¶ 44, ECF No. 64. Plaintiff's brief does not address any of these claims except to assert that they are likely to succeed "for the same reasons explained in its previous memorandum in support of a preliminary injunction." Pl.'s Mem. at 26, n.2. As Plaintiff merely relies on its past briefing, Defendants do the same. *See* Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj. at 16-21, ECF No. 43.

Regardless, to the extent NED is pursuing separate constitutional claims, such claims are barred because they are, at their heart, purely statutory.  The Supreme Court has confirmed that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims." *Dalton v. Specter*, 511 U.S. 462, 473 (1994); *see also*, *e.g.*, *Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.*, No. CV 25-298 (RDM), 2025 WL 1852762, at *17 (D.D.C. July 6, 2025) (same) (quoting *Dalton*, 511 U.S. at 473), *appeal filed*, No. 25-5254 (D.C. Cir. docketed July 16, 2025).  Because Plaintiff's claims focus entirely on Plaintiff's contentions that Defendants have not complied with their statutory obligations, such claims are untenable under *Dalton*.

## IV.     Plaintiff Cannot Establish Irreparable Harm

Plaintiff likewise fails to establish that it will suffer irreparable harm without a preliminary injunction.  To demonstrate irreparable harm, plaintiffs must meet a "high standard"—they must show that they face injuries that are "certain, great, actual, and imminent," *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008) (citation omitted), and are "beyond remediation," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  Making that showing requires "proof" that the harm they identify "is certain to occur in the near future." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).

Plaintiff cannot show such harm because Defendants have made no determination on the withholding of funds for grants to NED.  By no later than April 4, 2026, all of Plaintiffs FY2026 funding must be apportioned and may be obligated.  Thus, any harm is not certain or actual.  And Plaintiff's harm is in no way "beyond remediation." *Chaplaincy,* 454 F.3d at 297.  Defendants have not terminated any funding for grants to NED and the release of its funding would cure any harm.

13

Nor has NED demonstrated that the lack thus far of FY 2026 funding "threatens the very existence" of its "business." *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 36 (D.D.C. 2014) (citation omitted). And Plaintiff must document any such alleged harm with specific details. *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 51–52 (D.D.C. 2011) (plaintiff needed to "offer a projection of anticipated future losses, tie that to an accounting of the company's current assets, [and] explain with . . . specificity how he arrived at the conclusion that he would be forced out of business in eighteen months" to show irreparable harm on this theory).

Here, Plaintiff focuses on harm to NED's mission and operational capacities and on the possibility of further staff reductions. Pl.'s Mem. at 27-29. But nowhere does NED assert that the alleged partial withholding of its funding for a few months will threaten its "very existence". *Wis. Gas Co.*, 758 F.2d at 674. As NED's "very existence" is not "at stake, a temporary, remediable loss of funding is not an irreparable harm." *Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Hum. Servs.*, No. CV 25-1334 (TJK), 2025 WL 1768100, at *6 (D.D.C. June 26, 2025) (quoting *Wis Gas Co.*, 758 F.2d at 674), *dismissed by* No. 25-5238, 2025 WL 2178480 (D.C. Cir. July 29, 2025).

Plaintiff's reliance on *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016), is unavailing. Pl.'s Mem. at 27. *Newby* involved a challenge to proof-of-citizenship requirements that certain states mandated to participate in elections. 838 F.3d at 6. Thus, *Newby* turned on *statutory* obstacles, not economic harm. Here, Defendants have not imposed additional requirements that make it more legally or logistically difficult for Plaintiffs to execute the missions it has identified. Defendants have instead not yet apportioned, allocated or obligated FY 2026 funding, as permitted by statute, purportedly impacting NED's mission and activities. Further, *Newby* stressed that the harm must be beyond remediation. It was there

14

because voting registration deadlines for the election at issue would pass before Plaintiffs could get any relief. *Id.* at 9. In contrast, here no deadline has passed preventing remediation of NED's alleged harm. Plaintiffs' reliance on *Newby* is therefore misplaced.

Plaintiff also claims reputational harm because of Defendants' conduct. Pl.'s Mem. at 30. But any alleged harm must "directly result from the action which the movant seeks to enjoin." *Wis. Gas Co.*, 758 F.2d at 674. When a harm is "based on independent market variables such as how [a company's] customers and/or retail consumers might react," that harm does not flow directly from the challenged action. *Am. Meat Inst. v. U.S. Dep't of Agric.*, 968 F. Supp. 2d 38, 81 (D.D.C. 2013). The same is true for harm based on the reaction of NED's grantees or other nongovernmental organizations. Here, it requires speculation regarding those expected reactions to FY2026 funding decisions, even though blame may be ascribed to Defendants rather than to Plaintiff. And Plaintiff provides no evidence to buttress the notion that its reputation with grantees or potential grantees faces irreparable harm. Little reason exists to assume that grantees will not accept NED grant money whenever such funds are available.

Additionally, a substantial part of NED's irreparable harm argument focuses on claims of harm not to NED but to third parties served by NED's mission. *See* Pl.'s Mem. at 28-29 (citing harms to NED's partners and grantees); Second Suppl. Decl. of Damon M. Wilson. ¶¶ 12-16, 25-34, ECF No. 63-2. Plaintiff may not assert claims based on harm to someone else—they are limited to injuries for which they have standing. *See Citizens for Resp. & Ethics in Wash. v. U.S. Ctrs. for Disease Control & Prevention*, No. CV 25-1020 (TJK), 2025 WL 1580809, at *8 (D.D.C. June 4, 2025) (movant cannot rely on "'injuries to third parties' to support 'irreparable harm.'" (quoting *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018))).

Nor is harm to any unnamed parties, such as NED's employees, sufficient. "Harm that might befall unnamed third parties does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court." *New Mexico v. Musk*, 769 F.Supp.3d 1, 7 (D.D.C. 2025) (quoting *Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021)).

NED has not shown that their alleged harms are "actual[] and imminent," *Hi-Tech Pharmacal Co.*, 587 F. Supp. 2d at 11, or that they are beyond remediation. Such harms are not enough to warrant injunctive relief.

**V.     The Balance of Equities and Public Interest Do Not Favor a Preliminary Injunction.**

A preliminary injunction also is not appropriate because the balance of the equities and the public interest tip in Defendants' favor. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (holding that "[t]hese factors merge when the Government is the opposing party"). As an initial matter, given that Plaintiff cannot establish the first two factors necessary to obtain a preliminary injunction, "it is clear [Plaintiff] cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009).

But even if Plaintiff could satisfy one or both of those factors, the remaining factors weigh in Defendants' favor. *See Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims."), *appeal dismissed*, No. 23-7136, 2025 WL 313965 (D.C. Cir. Jan. 27, 2025).

The risk of harm to NED's asserted interests must be weighed against the obstruction of legitimate government functions that could result if the Court entered NED's proposed

16

injunction. *See Winter*, 555 U.S. at 24 ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." (citations omitted)).  In this setting, granting the preliminary injunction that Plaintiff seeks would disrupt the statutory scheme that Congress provided, including the relevant timing requirements, and Defendant's role within it, by mandating obligation of funds prior to any statutory requirement to do so.

Meanwhile, Plaintiff, as discussed above, will suffer no cognizable irreparable harm from the denial of its motion, as each of the potential harms that Plaintiff identifies is not certain; not beyond remediation; or asserted on behalf of a third party not before this Court.  On these facts, the balance of the equities and the public interest align against the entry of relief.

## **CONCLUSION**

For all these reasons, the Court should deny the Plaintiff's Motion for a Preliminary Injunction.


Dated: March 16, 2026                    Respectfully Submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General

                                         ALEXANDER K. HAAS
                                         Director, Federal Programs Branch

                                         JOSEPH E. BORSON
                                         Assistant Branch Director
                                         Federal Programs Branch

                                         */s/ Joshua N. Schopf*
                                         JOSHUA N. SCHOPF
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street NW
                                         Washington, DC 20530
                                         Tel.:   (202) 514-6314
                                         joshua.n.schopf@usdoj.gov

                                         *Counsel for Defendants*

18