# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| NATIONAL ENDOWMENT FOR DEMOCRACY, | : | |
| | : | No. 1:25-cv-648-DLF |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT.........................................................................................................................2

I.   PLAINTIFF'S CHALLENGE TO THE WITHHOLDING OF FUNDING IS MOOT .........2

II.  NO EXCEPTION TO MOOTNESS APPLIES.....................................................................5

     A.   The Voluntary Cessation Exception is Inapplicable...............................................5

     B.   The Capable of Repetition Yet Evading Review Exception Is Also
          Inapplicable .........................................................................................................8

CONCLUSION....................................................................................................................12

i

## TABLE OF AUTHORITIES

**CASES**

*\*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
   827 F.3d 100 (D.C. Cir. 2016)......................................................................................4, 10

*\*Alaska v. U.S. Dep't of Agric.*,
   17 F.4th 1224 (D.C. Cir. 2021)......................................................................................6, 7

*\*Alphabet Workers Union-Commc'n Workers of Am., Loc. 9009 v. NLRB*,
   134 F.4th 1217 (D.C. Cir. 2025)....................................................................................5, 9

*\*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013)........................................................................................................2, 5

*Citizens for Resp. & Ethics in Wash. v. Wheeler*,
   352 F. Supp. 3d 1 (D.D.C. 2019)......................................................................................7

*Del Monte Fresh Produce Co. v. United States*,
   570 F.3d 316 (D.C. Cir. 2009).........................................................................................10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)...........................................................................................................8

*Knox v. Serv. Emps. Int'l Union, Loc.,*
   *1000*, 567 U.S. 298 (2012) ................................................................................................8

*Larsen v. U.S. Navy*,
   525 F.3d 1 (D.C. Cir. 2008)...............................................................................................4

*Lewis v. Cont'l Bank Corp.*,
   494 U.S. 472 (1990).........................................................................................................10

*Nat'l Black Police Ass'n v. Dist. of Columbia*,
   108 F.3d 346 (D.C. Cir. 1997)...........................................................................................7

*Performance Coal Co. v. Fed. Mine & Health Rev. Comm'n*,
   642 F.3d 234 (D.C. Cir. 2011).........................................................................................11

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*,
   758 F.3d 296 (2014).........................................................................................................10

*Rhodes v. Stewart*,
   488 U.S. 1 (1988)...............................................................................................................4

*Safari Club Int'l v. Jewell*,
   842 F.3d 1280 (D.C. Cir. 2016).......................................................................................10

*Storer v. Brown*,
415 U.S. 724 (1974) ...................................................................................................10

*Super Tire Eng'g Co. v. McCorkle*,
416 U.S. 115 (1974) ...................................................................................................10

*United States v. Philip Morris USA Inc.*,
566 F.3d 1095 (D.C. Cir. 2009) ...................................................................................4

*United States v. Sanchez-Gomez*,
584 U.S. 381 (2018) .....................................................................................................2

*Vera v. Townley*,
83 F. Supp. 3d 306 (D.D.C. 2015) ...............................................................................3

**STATUTES**

22 U.S.C. § 4413.......................................................................................................6, 7

22 U.S.C. § 4414..........................................................................................................7

Consolidated Appropriations Act, 2026,
Pub. L. No. 119-75, div. F, tit. I, 140 Stat. at 521......................................................6

**OTHER AUTHORITIES**

Congressional Research Service, *Introduction to the Federal Budget Process* (Jan. 10, 2023),
https://www.congress.gov/crs-product/R46240.........................................................5

**INTRODUCTION**

This case, first brought more than seventeen months ago in early 2025, turns on Plaintiff's (or "NED" or the "Endowment") allegations that Defendants are interfering with, withholding and failing to obligate or disburse funding appropriated by Congress for grants to Plaintiff. Now, even after Defendants have obligated and disbursed funding for both fiscal year ("FY") 2025 and FY 2026, Plaintiff insists it needs more relief requiring this case to remain open. But Plaintiff's claims are moot as NED has received the essential requested relief. Any further litigation untethered to a particular appropriations law would merely re-litigate past claims or would amount to nothing more than an unnecessary and inappropriate advisory opinion.

Further, no exception to mootness applies. The voluntary-cessation exception does not apply because NED has full access to the relevant FY 2026 funding, there is no risk that the agency will undo that action, and Defendants did not attempt to manipulate the judicial process when obligating and disbursing funding for either FY 2025 or FY 2026. Nor would any future funding dispute evade review. This case has already remained open for seventeen months and Plaintiff can file a new complaint with even more time to obtain judicial review. And regardless, any further dispute will be based on the availability of future appropriations and a different appropriations statute, which may involve different terms than the current appropriations law and will thus not stem from the same action as the current dispute. This case is moot, and the Court should dismiss it.

**ARGUMENT**

**I.      PLAINTIFF'S CHALLENGE TO THE WITHHOLDING OF FUNDING IS MOOT**

Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Amended and Supplemental Complaints, ECF No. 76 ("Opp."), is largely a rehash of Plaintiff's prior arguments and claims against Defendants.  Opp. at 1-11.  The entire discussion obscures the fact that Defendants have already provided the fundamental relief requested by Plaintiff.

NED's supplemental complaint seeks an injunction "barring Defendants from withholding, blocking, reserving, or otherwise interfering with payment of funds Congress appropriates for grants to the Endowment, including by interfering with the apportionment, obligation, and ultimate disbursement of such funds."  Suppl. Compl. Suppl. Prayer for Relief ¶ (D), ECF No. 62-1; *see also* Proposed Order Granting Pls.' Mot. for a Prelim. Inj. ¶ 1, ECF No. 63-3.  The Complaint sought the same primary relief as that of their motion for preliminary injunction, which was withdrawn by Plaintiff after FY 2026 funding was fully obligated to Plaintiff.  *See* Order Granting Pls.' Mot. to Withdraw Mot. for Prelim. Inj., ECF No. 72.

Per Plaintiff, the Endowment has not received full relief because it lacks "a definitive ruling of its rights on the merits and permanent declaratory and injunctive relief…."  Opp. at 12.  But the injunction that Plaintiff seeks makes sense only in connection with "payment of funds Congress appropriates for grants to the Endowment...."  Suppl. Compl. Suppl. Prayer for Relief ¶ (D).

Congress has not currently appropriated any funds that are at issue. Thus, there is no live controversy.  *See United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)) (stating that "[a] case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts.").  The State Department obligated all

$315 million of FY 2026 funding that Congress appropriated for grants to Plaintiff.  *See* Consent Mot. to Stay Deadlines at 1, ECF No. 69 ("Consent Mot.").  And Plaintiffs have confirmed, and do not dispute in their opposition, that all FY 2026 funding was available in NED's payment [PMS] account and that "the Endowment received into its bank account the funds that it drew down from its PMS account."  Joint Status Report & Pls.' Mot. to Withdraw Pls.' Mot. for Prelim. Inj. at 1, ECF No. 70 ("March 31 JSR").

Thus, these requests are moot because Defendants have taken the requested action as it relates to funding Congress has appropriated.  Defendants have already done what Plaintiff "ha[s] asked this Court to force the government to do."  *González-Vera v. Townley*, 83 F. Supp. 3d 306, 311 (D.D.C. 2015).

Similarly, Plaintiff's other requests for relief beyond a permanent injunction are also moot.  Plaintiffs seek an order for Defendants "to cease their unlawful refusal to apportion, obligate, disburse, and otherwise make available the Endowment's funds"; and for the Court to "[d]eclare unlawful and set aside the Defendants' unlawful refusal to apportion, obligate, disburse, and otherwise make available the Endowment's congressionally appropriated funds as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the Administrative Procedure Act ("APA").  Suppl. Compl. Suppl. Prayer for Relief ¶¶ (A), (B).

These requests for relief are premised on an ongoing legal violation – Defendants alleged "unlawful refusal to apportion, obligate, disburse, and otherwise make available the Endowment's" funds.  *Id.  See also id.* ¶ 59 ("Defendants are currently unlawfully withholding the Endowment's appropriations by refusing to apportion and obligate the funds that Congress specifically appropriated for obligation to the Endowment.")  But none of those alleged actions are presently occurring.  All of Plaintiff's funds have been obligated and are available for

3

disbursement.  Mootness occurs, like here, when entry of relief prayed for in the complaint would do nothing to affect the defendant's immediate conduct toward the plaintiff.  See *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)  Further, entry of Plaintiff's requested relief would amount to nothing more than "exactly the type of advisory opinion Article III prohibits."  *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016) (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008)).

The entire dispute also remains moot because "the challenged conduct [has] cease[d[.]" *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (citation omitted). Plaintiff claims that Defendants maintain "[an] ongoing policy of interfering with the Endowment's appropriated funding[.]"  Opp. at 14.  But Defendants have no such policy.  Each of Plaintiff's claims challenges the same conduct, namely that Defendants have failed to apportion, obligate and disburse the FY 2026 funding to NED.  *See* Suppl. Compl. ¶¶ 40-48 (alleging under the APA that withholding of congressionally appropriated funding from NED is arbitrary and capricious and contrary to law) (Count Twelve); *id.* ¶¶ 49-61 (alleging under the APA that "Defendants' failure to apportion, obligate, and disburse the Endowment's fiscal year 2026 funding amounts to both unlawfully withheld agency action and unreasonably delayed agency action.") (Count Thirteen.)  And the FY 2025 funding, which was at issue in the Amended Complaint prior to its supplementation, Am. Compl., ECF No. 35, was long ago fully obligated and disbursed.  *See* Joint Status Report, ECF No. 48 ("Aug. 22, 2025 JSR") (confirming the obligation and disbursement of the remaining $94,941,000 in FY 2025 funding).

Plaintiff claims that the past history of this dispute demonstrates an ongoing conflict. Opp. at 14-15.  But any allegedly wrongful conduct underlying Plaintiff's complaint has disappeared now that Defendants' have acted on NED's funding, as have the injuries that

4

Plaintiff allegedly is suffering or will suffer. *See* Suppl. Compl. ¶ 60 ("Absent such relief, the

Endowment will face irreparable harm, including to its ability to fulfill its mission and to its

reputation as a reliable source of funding for democracy and freedom around the world."). And

merely because an administration budget proposal for a future fiscal year proposes the defunding

of the Endowment, Opp. at 14, does not mean that Defendants intend to withhold any such

funding if Congress decides to appropriate funds. Such budget proposals have no legal effect.

*See* Congressional Research Service, *Introduction to the Federal Budget Process* (Jan. 10, 2023),

https://www.congress.gov/crs-product/R46240 ("the President's budget is only a request to

Congress. . . .").

Thus, the entire dispute is moot. If Plaintiff wants to challenge future conduct, the

appropriate means for doing so is to file a new complaint.

## II.   NO EXCEPTION TO MOOTNESS APPLIES

Because Plaintiff has received its relief, this case no longer presents a live dispute under

the mootness doctrine. And Plaintiff is incorrect that either exception, that of voluntary cessation

or that of an action capable of repetition but evading review, to the mootness doctrine applies.

### A.   The Voluntary Cessation Exception is Inapplicable

Courts recognize a voluntary cessation exception to prevent a scenario in which "a

defendant could engage in unlawful conduct, stop when sued to have the case declared moot,

then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."

*Already*, 568 U.S. at 91. The exception exists to prevent a defendant "from manipulating the

judicial process." *Alphabet Workers Union-Commc'n Workers of Am., Loc. 9009 v. NLRB*, 134

F.4th 1217, 1226 (D.C. Cir. 2025) (citation omitted);

Plaintiff claims that Defendants have "stopped engaging in unlawful conduct" only in

response to this litigation." Opp. at 16. Even if true, that alone does not mean that Defendants

are manipulating the judicial process.  Defendants' obligation and disbursement of FY 2025

funds for grants to Plaintiff came after a preliminary injunction order against Defendants.  ECF

No. 45.  Defendants did not manipulate the judicial process by complying with the Court's order.

Nor can Defendants be said to have voluntarily ceased activity when complying with such an

order.  *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1227 (D.C. Cir. 2021) ("[T]here [is] nothing

'voluntary' about [a] federal agency's" compliance with a court order.).

As for the obligation and disbursement of FY 2026 funds appropriated by Congress for

grants to Plaintiff, Defendants did not act "only due to rulings or threatened rulings of this

Court."  Opp. at 16.  First, Defendants agreed to obligate the FY 2026 funding prior to any legal

deadline for doing so.  The full-year FY 2026 appropriations law appropriates $315,000,000 for

grants made by the Department of State to NED and states that "funds appropriated under this

heading shall be apportioned to the Endowment not later than 60 days after the date of enactment

of this Act." Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, div. F, tit. I, 140 Stat.

at 521.  That sixty-day period concluded on April 4, 2026.  Defendants obligated and made

available for distribution all $315,000,000 by March 25, 2026.  Consent Mot. at 1.

Second, Defendants agreed to obligate and make available the FY 2026 funding after

Plaintiff confirmed its commitment to comply with all requirements in the NED Act, ECF No.

68, not as a result of a court ruling or because Defendants could not or would not provide

"evidence in support of their" purportedly "false allegations about the Endowment."  Opp. at 17.

Grants may be made to NED only if NED agrees to comply with "the requirements specified in

the NED Act.  22 U.S.C § 4413(a).  Such requirements include that NED is subject to annual

audits by the Department of State (as successor agency to the U.S. Information Agency).  *Id.* §

4413(g).  NED must also "consult with the Department of State on any overseas program funded by the Endowment prior to the commencement of the activities of that program."  *Id.* § 4414(b).

On March 13, 2026, the Department of State's Under Secretary for Public Diplomacy sent a letter to Mr. Damon Wilson, the president and CEO of NED.  That letter raised concerns about some of NED's activities and about some of its auditing and reporting mechanisms.  *See* Defs.' Opp'n to Pls.' Mot. for a Prelim. Inj., Ex. 1, ECF No. 65-1.  The letter asked NED to confirm compliance with all NED Act requirements.  *Id.*  On March 18, 2026, in a response letter to State, NED confirmed compliance with all NED Act requirements.  On the very next day of March 19, 2026, State began allotting FY 2026 funding to the Bureau of Democracy, Human Rights, and Labor (DRL), which began the process leading to the obligation of funding into NED's accounts.  Consent Mot. to Hold Surreply Deadline in Abeyance at 1, ECF No. 68.

This timeline of events indicates that Defendants did not act in response to this litigation. Nor, as in cases cited by Plaintiff, did Defendants engage in an effort "to manipulate the judicial process."  *Alaska*, 17 F.4th at 1227.  The Court should not "'impute such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on the likelihood of a manipulative purpose.'"  *Id.* (citation omitted); *see also Nat'l Black Police Ass'n v. Dist. of Columbia,* 108 F.3d 346, 352 (D.C. Cir. 1997) (stating same).

Rather, Defendants acted for independent reasons.  *See Citizens for Resp. & Ethics in Wash*. *v. Wheeler,* 352 F. Supp. 3d 1, 13 (D.D.C. 2019) ("The voluntary-cessation exception to the mootness doctrine . . . does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation.") (citation modified).

Further, and as explained, there is no risk Defendants will undo the action here.  *See Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (explaining that the

7

voluntary cessation exception serves to prevent a defendant from "resum[ing] . . . the challenged conduct as soon as the case is dismissed").  Defendants have acted by obligating and disbursing FY 2026 funding to NED as sought in NED's supplemental complaint.  *See* March 31 JSR at 1 (noting the full obligation of NED's funding and the receipt of funds into NED's bank account).  And Defendants provided NED and the Court with assurances that all FY 2026 funding draw down requests "will be paid on the standard timeline in the payment management system."  Consent Mot. at 1; *See also* March 31 JSR at 1-2.  These actions, which are the subject of Plaintiff's Supplemental Complaint, cannot be undone.  *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (explaining that exception is inapplicable when "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.").  Contrary to Plaintiff's arguments, Opp. at 18-20, their claims are inextricably intertwined with the facts outlined in Plaintiff's complaint, and those facts relate to funding that is no longer at issue.  *See, e.g.*, Suppl. Compl. ¶ 59 ("Defendants are currently unlawfully withholding the Endowment's appropriations by refusing to apportion and obligate the funds that Congress specifically appropriated for obligation to the Endowment.").  As such, Defendants are not "interfe[ring] with the Endowment's appropriated funding in violation of the NED Act[.]" Opp. at 19.

Thus, the voluntary-cessation exception has no applicability here.

**B.    The Capable of Repetition Yet Evading Review Exception Is Also Inapplicable**

The capable-of-repetition-yet-evading-review exception requires that "the challenged action be too short in duration to be fully litigated before its cessation or expiration" and that "there be a reasonable expectation that the same complaining party would face the same action again." *Alphabet Workers*, 134 F.4th at 1226.

Plaintiff maintains that both requirements are met here.  Opp. at 20-25.  But this ignores the fact that any future dispute will not involve the same action.  A future similar dispute would occur under a different congressional appropriations act for a future fiscal year.  So, any dispute based on future appropriations, which in any event cannot be predicted and which may involve different terms than the current appropriations law (FY 2026), would not be the "same action" but rather a new action requiring a new complaint from the Plaintiff.

Plaintiff attempts to impose a bright line on future agency action.  *Id.* at 22 ("The Endowment contends that the NED Act entitles it to receive the funds that Congress appropriates, and that Defendants may not interfere with that funding. . . .").  But, among other things, the NED Act must be read in concert with the relevant appropriations laws and any alleged "unlawful withholding of the Endowment's funding," Opp. at 21, must be judged in the context of the mandates laid out in a particular appropriations law.  No appropriations law even exists for FY 2027 or beyond.  So, Plaintiffs do not have a reasonable basis for assuming the "same action" will occur for future appropriations.

As for this dispute, Defendants have obligated the funds appropriated by Congress and disbursed all funds requested by Plaintiff.  *See* Consent Mot.  Any future dispute thus will not involve fiscal year 2026 money and will be based on a different appropriations act.  In other words, any future dispute will be different in multiple material ways from this dispute.  The Court should not retain jurisdiction over a case that would require it to predict how Congress will act on future appropriations.

Further, any future action to withhold funding from NED is not "the sort of action which, by reason of the inherently short duration of the opportunity for remedy, is likely forever to evade review."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990) (citation modified).  This narrow

exception applies in limited circumstances—such as a labor strike or election campaign, *see Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 126-27 (1974) (labor strike); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (election campaign)—that are too transient to receive judicial review.

Here, as evidenced by the history of this case, every reason exists to believe that, in the ordinary course, there would be "ample time to obtain judicial review" of any similar future action, *Lewis*, 494 U.S. at 482.  Plaintiff filed its original Complaint on March 5, 2025, ECF No. 1, more than seventeen months ago.  Since that time, Plaintiff has obtained relief on its original claims about FY 2025 funding and on its supplemental claims about FY 2026 funding.  No funding remains at issue and no relief is needed.  Thus, no urgency exists requiring this case to stay open and no evasion of review is evident.  *Cf. Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1288 (D.C. Cir. 2016) (this "narrow exception is for quick-burning disputes").

Plaintiff claims that any actions that cannot be fully litigated within two years meet the evading review exception.  Opp. at 23-24.  But this purported "rule of thumb", *id.* at 24, makes little sense here because Defendants are not currently engaged in any action needing review.  As explained above, Plaintiff seeks to hold this case open not because it needs present relief, and not because it suffers any irreparable harm but so that it can obtain what amounts to an inappropriate advisory opinion.  *See Akiachak Native Cmty.*, 827 F.3d at 106.

Further, the cases cited by Plaintiff generally involve situations where a regular agency process is of such short duration that review is made difficult or impossible and that same process will most likely reoccur.  *See, e.g. Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 323 (2014) (noting that CFUIS order, which has a maximum effect of ninety days, is "too short-lived to obtain Supreme Court review and therefore evades review."); *Del Monte Fresh Produce Co. v. United States,* 570 F.3d 316, 320 (D.C. Cir. 2009) (involving unreasonable delay challenge to

supposed expedited OFAC licensing process, in which OFAC admitted that future processing "may take longer than the time periods suggested at the inception of the [] program."); *see also Performance Coal Co. v. Fed. Mine & Health Rev. Comm'n*, 642 F.3d 234, 237 (D.C. Cir. 2011) (holding that Defendant's order seizing control of a mine, which "went through sixty iterations" in its first six weeks, was subject to inevitable "future modification[] which certainly places the present controversy within this court's two-year rule for short-lived agency actions.").

Here, when seventeen months have already passed since the filing of Plaintiff's original complaint, when Plaintiff has already received effective relief, and when no order or agency action is subject to inevitable modification or delay, no challenged action exists that evades review. And Plaintiffs have not adequately explained why the facts of this case suggest otherwise. *See* Opp. at 23-25.

11

## **CONCLUSION**

Because Defendants have already provided the fundamental relief Plaintiff seeks in the

Complaint, and for the foregoing reasons and those explained in Defendant's opening brief, the

entire case is moot and should be dismissed under Federal Rule of Civil Procedure 12(b)(1).


Dated:          July 17, 2026                    Respectfully Submitted,

                                                 BRETT A. SHUMATE
                                                 Assistant Attorney General

                                                 ALEXANDER K. HAAS
                                                 Director, Federal Programs Branch

                                                 JOSEPH E. BORSON
                                                 Assistant Branch Director
                                                 Federal Programs Branch

                                                 */s/ Joshua N. Schopf*
                                                 JOSHUA N. SCHOPF
                                                 United States Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 1100 L Street NW
                                                 Washington, DC 20530
                                                 Tel.:    (202) 514-6314
                                                 joshua.n.schopf@usdoj.gov

                                                 *Counsel for Defendants*

12